## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| **Debtors.** | |
| FTX RECOVERY TRUST, | |
| **Plaintiff,** | Adv. Proc. No. 24-50197 (KBO) |
| FARMINGTON STATE CORPORATION (f/k/a FARMINGTON STATE BANK, d/b/a GENIOME BANK, d/b/a MOONSTONE BANK), FBH CORPORATION, and JEAN CHALOPIN, | |
| **Defendants.** | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**Dated:** April 18, 2025

**FAEGRE DRINKER BIDDLE & REATH LLP**

Brett D. Fallon (Del. Bar No. 2480)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
brett.fallon@faegredrinker.com

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

Ty Kelly Cronin (admitted *pro hac vice*)
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Telephone: (410) 862-1049
tykelly@bakerdonelson.com

Destiney Parker-Thompson (Del. Bar. No.7479)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900
dparkerthompson@bakerdonelson.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

I.    PRELIMINARY STATEMENT ................................................................ 1

II.    BACKGROUND, NATURE, AND STAGE OF PROCEEDINGS ............................ 2

    A.    The Parties' Relationship. ................................................................ 2
    B.    Investigations and Criminal Proceedings Against the FTX Insiders. ............ 4
    C.    Plaintiff's Chapter 11 Bankruptcy Case. ............................................ 5
    D.    The Instant Proceeding. ................................................................ 6

III.    ARGUMENT ...................................................................................... 6

    A.    Motion to Dismiss Standard ............................................................ 6
    B.    Plaintiff's Bankruptcy Claims Against Defendants Should Be
        Dismissed. .................................................................................. 7

        1.    Plaintiff Lacks Standing to Bring an Avoidance Claim Under
                Section 544(b) (Counts III & IV) .......................................... 7

        2.    Plaintiff Has Failed to Plead Facts Sufficient to State a
                Fraudulent Conveyance Claim Against Mr. Chalopin (Counts II
                & IV). ............................................................................ 8

            a.    Plaintiff Has Failed to Allege that Mr. Chalopin Was a
                    Transferee of the Alameda Transfer. ............................ 8

            b.    Plaintiff Has Failed to Plead Facts Sufficient to Show that
                    Alameda was Insolvent at the Time of the FBH Investment. ....... 9

            c.    Plaintiff Has Failed to Plead Facts Sufficient to Show that it
                    Received Less than "Reasonably Equivalent Value." ............... 12

    C.    The FBH Investment Is Unavoidable Because It Falls Under the Safe
        Harbor Provision. ...................................................................... 15

        1.    The FBH Investment Qualifies as a Settlement Payment. ................ 16

        2.    Farmington is a "Financial Institution." .................................. 16

    D.    Plaintiff Has Failed to Establish Personal Jurisdiction Over Mr.
        Chalopin for any Claims Against Him ............................................ 17

        1.    This Court Lacks Personal Jurisdiction Over Mr. Chalopin for
            the Bankruptcy-Related Claims (Counts II and IV). ...................... 18

        2.    This Court Lacks Personal Jurisdiction Over Mr. Chalopin for
            the State Claims (Counts V and VI). .................................... 21

E.    Plaintiff Has Failed to Plead Facts Sufficient to Support its Non-Bankruptcy Claims Against Mr. Chalopin (Counts V & VI) .......................22

    1.    Plaintiff Has Not Alleged Sufficient Facts to Pierce FBH's Corporate Veil in Order to Obtain Personal Liability Over Mr. Chalopin. ..........................................................................................22

    2.    Plaintiff Has Failed to State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count V). .................................................23

    3.    Plaintiff Has Failed to State a Claim for Aiding and Abetting Corporate Waste (Count VI). ...........................................................26

IV.   CONCLUSION...........................................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                   **Page(s)**

*Allard v. Flamingo Hilton (In re Chomakos)*,
    69 F.3d 769 (6th Cir. 1995) ................................................................................................. 13

*Angstadt v. Midd-West Sch. Dist.*,
    377 F.3d 338 (3d Cir. 2004) .................................................................................................. 3

*Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.)*,
    423 B.R. 76 (Bankr. D. Del. 2010) ...................................................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 6, 7, 10

*Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*,
    No. 04-10322 (MFW), 2006 Bankr. LEXIS 2443 (Bankr. D. Del. Oct. 2, 2006) .................. 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 6, 7, 10

*Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n*,
    878 F.2d 742 (3d Cir. 1989) ................................................................................................. 16

*Brandt v. B.A. Capital Co. (In re Plassein Int'l Corp.)*,
    366 B.R. 318 (Bankr. D. Del. 2007) ..................................................................................... 15

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*,
    582 U.S. 255 (2017) ............................................................................................................. 20

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................................................. 20

*Cognizant Tech. Sols. Corp. Derivative Litig.*
    101 F.4th 250 (3d Cir. 2024) .......................................................................................... 26, 27

*Cred. Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred. Inc.*,
    650 B.R. 803 (Bankr. D. Del. 2023) ..................................................................................... 24

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................................. 17

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*,
    747 F.3d 145 (2d Cir. 2014) .................................................................................................. 7

*Epsilon Plastics, Inc. v. Goscin*,
    No. 05-4935 (JAG), 2006 U.S. Dist. LEXIS 17596 (D.N.J. Mar. 24, 2006) .......................... 21

iii

*Fowler v. UPMC Shadyside,*
   578 F.3d 203 (3d Cir. 2009) ........................................................................................... 10

*Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.),*
   No. 16-10202 (KG), 2018 Bankr. LEXIS 2650 (Bankr. D. Del. Sept. 4, 2018) ...................... 8

*Giuliano v. Fleming (In re Nobilis Health Corp.),*
   19-12264 (CTG), 2022 Bankr. LEXIS 2057 (Bankr. D. Del. July 27, 2022) ................... 19, 26

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) ................................................................................................. 17, 19

*HMG/Courtland Props., Inc. v. Gray,*
   729 A.2d 300 (Del. Ch. 1999) ....................................................................................... 21

*In re Foxmeyer Corp.,*
   290 B.R. 229 (Bankr. D. Del. 2003) ........................................................................... 22, 23

*In re Santa Fe Pac. Corp. Shareholder Litig.,*
   669 A.2d 59 (Del. 1995) ............................................................................................... 25

*In re Volcano Corp. Stockholder Litig.,*
   143 A.3d 727 (Del. Ch. 2016) ....................................................................................... 24

*In re Worth Collection, Ltd.,*
   666 B.R. 726 (Bankr. D. Del. 2024) ............................................................................... 22

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ..................................................................................................... 17

*Jalbert v. Souza (In re F-Squared Inv. Mgmt., LLC),*
   No. 15-11469, 2019 Bankr. LEXIS 2817 (Bankr. D. Del. Sept. 6, 2019) .............................. 9

*JCF AFFM Debt Holdings, L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins. Holdings, Inc.),*
   565 B.R. 566 (Bankr. D. Del. 2017) ............................................................................... 11

*Kramer v. W. Pac. Indus., Inc.,*
   546 A.2d 348 (Del. 1988) ............................................................................................. 26

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.,*
   181 F.3d 505 (3d Cir. 1999) ......................................................................................... 16

*Malpiede v. Townson,*
   780 A.2d 1075 (Del. 2001) ........................................................................................... 24

*McTernan v. City of York,*
   577 F.3d 521 (3d Cir. 2009) ........................................................................................... 6

*Mellon Bank, N.A. v. Metro Commc'ns, Inc.,*
   945 F.2d 635 (3d Cir. 1991) ......................................................................................... 10

*Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L.*,
  92 F.3d 139 (3d Cir. 1996) ............................................................................................... 12, 13

*Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*,
  386 B.R. 37 (Bankr. D. Del. 2008) ................................................................................. 8, 9, 12

*Miller Yacht Sales, Inc. v. Smith*,
  384 F.3d 93 (3d Cir. 2004) ...................................................................................................... 18

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
  331 F.3d 406 (3d Cir. 2003) .................................................................................................... 26

*O2Cool, LLC v. TSA Stores, Inc. (In re TSAWD Holdings, Inc.*,
  No. 16-10527 (MFW), 2017 Bankr. LEXIS 559 (Bankr. D. Del. March 1, 2017) .................. 3

*Off. Comm. of Unsecured Creditors v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.*,
  274 B.R. 71 (Bankr. D. Del. 2002) .......................................................................................... 16

*Off. Comm. of Unsecured Creditors v. Chinery (In re Cybergenics Corp.)*,
  226 F. 3d 237 (3d. Cir. 2000) .................................................................................................... 7

*Pension Transfer Corp. v. Beneficiaries under the Third Amendment to
Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*,
  444 F.3d 203 (3d Cir. 2006) .................................................................................................... 12

*Pinker v. Roche Holdings, Ltd.*,
  292 F.3d 361 (3d Cir. 2002) .................................................................................................... 18

*RPA Asset Mgmt. Servs., LLC v. Siffin (In re MTE Holdings LLC)*,
  No. 19-12269 (CTG), 2022 Bankr. LEXIS 2352 (Bankr. D. Del. Aug. 24, 2022) ................ 26

*SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*,
  573 F. App'x 154 (3d Cir. 2014) ............................................................................................. 24

*Scher v. Cent. Bank of India (In re Essar Steel Minn. LLC)*,
  No. 16-11626, 2020 Bankr. LEXIS 2902 (Bankr. D. Del. Oct. 15, 2020) ............................. 10

*Stranahan Gear Co. v. NL Indus., Inc.*,
  800 F.2d 53 (3d Cir. 1986) ...................................................................................................... 18

*Time Share Vacation Club v. Atlantic Resorts Ltd.*,
  735 F.2d 61 (3d Cir. 1984) ...................................................................................................... 18

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
  871 A.2d 1108 (Del. 2005) ...................................................................................................... 22

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................................................... 17, 19

*Walsh v. The Toledo Hosp. (In re Financial Mgmt. Sciences)*,
  261 B.R. 150 (Bankr. W.D. Pa. 2001) ..................................................................................... 16

*Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*,
   477 B.R. 504 (Bankr. D. Del. 2012)................................................................................15

**Statutes**

11 U.S.C. § 101(32) ......................................................................................................10

11 U.S.C. § 101(22) ......................................................................................................16

11 U.S.C. § 544(b) .......................................................................................................7, 8

11 U.S.C. § 546(e) ...........................................................................................15, 16, 17

11 U.S.C. § 550 ...............................................................................................................8

11 U.S.C. § 741(7)(A) ...................................................................................................16

11 U.S.C. § 741(8) .........................................................................................................16

3 Del. C. § 3104 .............................................................................................................21

10 Del. C. § 3104(c)(4) ..................................................................................................21

**Rules**

Fed. R. Bankr. P. 7004(d) .............................................................................................18

Fed. R. Civ. P. 9 ............................................................................................................24

## I.    <u>PRELIMINARY STATEMENT</u>

Even after a second bite at the apple by filing an Amended Complaint (ECF No. 21), Plaintiff's attempt to re-write history still fails. Plaintiff seeks to create a false narrative that Defendant Jean Chalopin ("Mr. Chalopin"), a Bahamian resident and President of Defendant FBH Corporation ("FBH"), was aware of the FTX fraud months before the rest of the world.  To breathe credence into this false narrative, which is an obvious and desperate attempt to find what it thinks is a deep pocket, Plaintiff asks this Court to stack inferences upon inferences and ignore the basic truth: the FTX fraud was one of the biggest in history, resulting in this gargantuan bankruptcy that left countless individuals and institutions with devastating losses, including Defendants here.

Plaintiff flips the switch and now asserts in the Amended Complaint that it was victimized by Defendant Farmington State Corporation ("Farmington"), FBH, and Mr. Chalopin, and it seeks to recover the $11.5 million invested in FBH (the "FBH Investment")[1] and indeterminate compensatory damages. The Amended Complaint alleges constructive fraudulent conveyance against FBH and Farmington under the Bankruptcy Code and state law.  Plaintiff argues that it was deceived—despite being managed by sophisticated professionals—out of its $11.5 million investment through misrepresentations of Farmington's value. Notably, though, while the Amended Complaint references the Agreement (defined below) governing the FBH Investment, it curiously neglects to mention that the Agreement *explicitly warned* Plaintiff of significant risks, including the need for Federal Reserve approval for its business plan which was not guaranteed. This language, which Plaintiff reviewed and accepted before signing, transparently outlined both

---

[1] FBH is the holding company for Farmington. The $11.5 million investment was made to FBH with the understanding that it would fund Farmington.

the risks and potential rewards of the FBH Investment, a critical fact that undermines Plaintiff's entire case.

Plaintiff does not end there.  Because it is public knowledge[2] that Farmington is no longer operating and therefore is unlikely to have the funds it seeks, Plaintiff also adds fraudulent conveyance claims against Mr. Chalopin, along with rarely filed state law claims for aiding and abetting a breach of fiduciary duty and corporate waste, an obvious search for a deeper pocket. These claims border on the absurd, and the Court should dismiss the Amended Complaint against all Defendants in its entirety with prejudice.

## II.   BACKGROUND, NATURE, AND STAGE OF PROCEEDINGS

### A.   The Parties' Relationship.

Farmington, chartered under Washington law, was founded in 1887 as a traditional bank. At the time it was acquired by FBH, a Maryland-based holding company, in 2020, Farmington had been FDIC-insured for more than 90 years. Farmington sought to transform and expand into an innovative leader in financial services, focusing on digital assets like cryptocurrency, while maintaining its commitment to the community it had served for more than a century.  To pursue this business plan, Farmington sought to raise capital from outside investors.

FTX.com quickly became one of the largest digital asset exchanges in the world. (Am. Compl. ¶ 31).  In 2020, FTX US, a digital asset exchange that U.S.-based customers could use, was founded. *Id.* By 2021, the FTX Exchanges (the combination of FTX.com and FTX US) claimed to hold approximately $15 billion in assets. (Am. Compl. ¶ 32). In early 2022, the FTX

---

[2] Zoe Sagalow, *Fed. ends enforcement action against Farmington State Bank*, S&P Global, https://www.spglobal.com/market-intelligence/en/news-insights/articles/2023/9/farmington-state-bank-fall-shows-risk-of-pivoting-without-regulatory-permission-77399721 (Sept. 12, 2023).

Exchanges' reputation remained flawless, and it was transacting business with some of the most sophisticated companies in the world.[3]

In January 2022, FBH entered into a Subscription Agreement (the "Agreement") with Alameda Research Ventures LLC ("Alameda"), a Delaware limited liability company that was separate from the FTX Exchanges, for the FBH Investment. A true and accurate copy of the signed Agreement is attached hereto as **Exhibit A**.[4] Importantly, the Agreement included a disclosure that Farmington needed the Federal Reserve's approval to implement its new business plan. *See* Exhibit A, § 4.5. The Agreement also included representations and warranties by Alameda that its investment in FBH was made in accordance with all applicable laws, and that Plaintiff was aware of the risks associated with the FBH Investment. *Id.*, § 3.2.  The Agreement specifically states—

> Subscriber has such knowledge, sophistication, and experience in business and financial matters so as to be capable of evaluating the merits and risks of the prospective investment in the Shares and has so evaluated the merits and risks of such investment. Subscriber is capable of protecting its own interests in connection with this investment and has experience as an investor in securities of companies like the Company. Subscriber is able to hold the Shares indefinitely if required, is able to bear the economic risk of an investment in the Shares, and, at the present time, is able to afford a complete loss of such investment.

---

[3] *Rise and fall of crypto exchange FTX*, Reuters, https://www.reuters.com/markets/currencies/rise-fall-crypto-exchange-ftx-2022-11-10/ (Nov. 16, 2022).

[4] A court may consider documents referenced in or integral to the allegations in a complaint. *See, e.g.*, *O2Cool, LLC v. TSA Stores, Inc. (In re TSAWD Holdings, Inc.)*, No. 16-10527 (MFW), 2017 Bankr. LEXIS 559, at *11 (Bankr. D. Del. March 1, 2017) (citing *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("[A]though a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss to one for summary judgment")).

*Id.*, § 3.2(f).

Just months later, the investigations into FTX and its affiliates and the indictments of the FTX Insiders[5] took the world by storm. (Am. Compl. ¶ 33). Farmington faced insurmountable challenges directly caused by Plaintiff's fraud, which forced Farmington's Board of Directors to voluntarily relinquish its banking charter and initiate the Farmington's liquidation process.[6] Consequently, Farmington and FBH entered into a purchase and assumption agreement with the Bank of Eastern Oregon, which assumed Farmington's deposits and purchased its assets. Immediately thereafter, Farmington voluntarily relinquished its right to operate as a bank. *Id.*

In summary, less than a year after the FBH Investment, extensive regulatory and criminal investigations revealed considerable evidence of Plaintiff's fraud. These included the misuse of billions of dollars, "reckless" trading, and purchases made solely for Plaintiff's personal benefit. (Am. Compl. ¶¶ 2, 33). Plaintiff's actions triggered a series of losses for itself, the FTX Group[7], and countless others—including Defendants. (*Id.* ¶ 33).

### B.    Investigations and Criminal Proceedings Against the FTX Insiders.

In November 2022, allegations about mismanagement, misappropriation, and reckless use of the FTX Exchanges' funds surfaced. (*Id.*). These allegations revealed, among other things, that "the exponential growth and purported success of the FTX Debtors were, in fact, fueled by a host of reckless and fraudulent practices perpetrated by, and for the benefit of, the FTX Insiders." (*Id.* ¶ 2). As of the date this action was initiated, the FTX Insiders had pleaded guilty to crimes

---

[5] *See* Am. Compl. ¶ 1.

[6] *Rise and fall of crypto exchange FTX*, Reuters, https://www.reuters.com/markets/currencies/rise-fall-crypto-exchange-ftx-2022-11-10/ (Nov. 16, 2022).

[7] *See* Am. Compl. at 2, n.2

predicated on their mismanagement and fraudulent business practices. (*Id.* ¶ 33, 61–62). The guilty pleas establish that the FTX Debtors fooled the world, until the house of cards fell and left countess people and parties with devastating losses, including Farmington and Mr. Chalopin. (*Id.* ¶¶ 61, 78).

### C.   Plaintiff's Chapter 11 Bankruptcy Case.

Following the exposure of the fraud perpetrated by those responsible for professionally managing and operating their business affairs, the FTX Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Code"). (*Id.* ¶ 10). On May 23, 2024, the Court-appointed examiner (the "Examiner") filed a report summarizing the Examiner's investigations and findings into, among other things, the benefit (if any) of pursuing certain avoidance actions like this one (the "Examiner's Report"). *See In re FTX Trading LTD, et al.*, No. 1:22-bk-11068 (JTD) (Bank. D. Del.), D.I. 15545. In explaining why an avoidance action to recover the $11.5 million would *not* benefit the FTX Debtors' estates, the Examiner's Report stated:

> S&C considered a potential avoidance action against Moonstone Bank to recover the $11.5 million investment by Alameda Research Ventures. However, while S&C was evaluating litigation, the Federal Reserve Board and Washington Department of Financial Institutions announced an enforcement action against Moonstone Bank and, as a consequence, the bank wound down its operations. Accordingly, S&C determined that litigation was unlikely to be accretive to the estates.

*Id.* at 214.

On September 30, 2024, the Debtors filed their Second Amended Joint Chapter 11 Plan (the "Plan"), which the Court confirmed on October 8, 2024 (the "Confirmation Order"). *See* D.I. 26029 and D.I. 26404. Initially, the Debtors' cases were jointly administered but subsequently consolidated, at the Debtors' request, in the Confirmation Order. (*Id.* ¶ 85).

### D.      The Instant Proceeding.

On November 8, 2024, with full knowledge that "litigation was unlikely to be accretive to the estate" based on no likely recovery from FBH or Farmington, Plaintiff commenced the instant proceeding to recover Alameda's $11.5 million investment in FBH, as well as unspecified and unquantifiable damages from Mr. Chalopin under claims of aiding and abetting breach of fiduciary duty and aiding and abetting corporate waste. (Adv. D.I. 1). Defendants moved to dismiss Plaintiff's original complaint on January 27, 2023. (Adv. D.I. 9–10).  While Defendants' first motion to dismiss was pending, Plaintiff filed its Amended Complaint on March 17, 2025.  (Adv. D.I. 21).

## III.   ARGUMENT

### A.      Motion to Dismiss Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In deciding a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice, nor will a complaint that tenders

"naked assertion[s] devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Moreover, the court need not accept "general allegations that are contradicted 'by more specific allegations in the Complaint.'" *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014).

### B.    Plaintiff's Bankruptcy Claims Against Defendants Should Be Dismissed.

#### 1.    Plaintiff Lacks Standing to Bring an Avoidance Claim Under Section 544(b) (Counts III & IV).

To sufficiently plead a claim under 11 U.S.C. § 544(b), Plaintiff must allege facts sufficient to show that *as of the petition date*, there was a creditor (a "triggering creditor") that held an allowable unsecured claim against Defendants. *See* 11 U.S.C. § 544(b) (authorizing debtor in possession to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law *by a creditor holding an [allowable] unsecured claim*") (emphasis added); *Off. Comm. of Unsecured Creditors v. Chinery* (*In re Cybergenics Corp.*), 226 F. 3d 237, 243 (3d. Cir. 2000) (explaining that to properly assert a claim under § 544(b), there must exist an unsecured creditor that holds a non-bankruptcy claim). Section 544(b) allows a debtor in possession to step into the shoes of an unsecured creditor holding a fraudulent transfer claim that it would otherwise pursue, absent the bankruptcy filing. *Chinery*, 226 F.3d at 243. Section 544(b) differs from other Code provisions that allow avoidance of certain transactions (such as § 548), because under § 544(b), a debtor in possession can only bring a claim if there is an unsecured creditor (of the debtor) that has the requisite non-bankruptcy cause of action. Here, because the Amended Complaint alleges no such unsecured creditor, Plaintiff has no standing to bring a § 544(b) claim against Defendants. Consequently, Counts III and IV[8] therefore should be

---

[8] Lack of personal jurisdiction over Mr. Chalopin, a Bahamian Resident, is a separate reason to dismiss all claims against him. *See* Section B(D) *infra*.

dismissed. *See, e.g., Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*, No. 16-10202 (KG), 2018 Bankr. LEXIS 2650, at *6 (Bankr. D. Del. Sept. 4, 2018) (this Court dismissing § 544(b) claim because the trustee "[did] not allege, as Section 544(b)(1) requires, that there [was] a creditor holding an allowable unsecured claim on the petition date," or that "such a creditor could have asserted a fraudulent transfer claim against the … Defendants if there were no bankruptcy case.").

> **2.      Plaintiff Has Failed to Plead Facts Sufficient to State a Fraudulent Conveyance Claim Against Mr. Chalopin (Counts I & II).**

Counts I and II of the Amended Complaint should be dismissed because Plaintiff has failed to plead, as it must to survive dismissal, facts sufficient to show (a) that Mr. Chalopin was a transferee, (b) that Alameda was insolvent, or (c) that Alameda received less than equivalent value for its investment to support its fraudulent conveyance claim.

> **a.   Plaintiff Has Failed to Allege that Mr. Chalopin Was a Transferee of the Alameda Transfer.**

First, Plaintiff has failed to plausibly allege in the Amended Complaint that Mr. Chalopin was a transferee of the Alameda Transfer.  On this, *Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*, 386 B.R. 37 (Bankr. D. Del. 2008), is instructive. There, the trustee brought constructive fraudulent conveyance claims against a group of defendants, which included a former board member of one of the debtors, and a senior officer of one of the defendant entities (Naples). Naples moved to dismiss, arguing that the trustee failed to allege that the individual defendant was a transferee of the debtors' property.  Naples highlighted the language in Section 550(a), which provides that a trustee or debtor in possession can only recover an avoidable transfer from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." *Id.* at 53 (quoting 11 U.S.C. § 550). Applying this limitation, Naples argued that the complaint only claimed that he benefited from the

transfer because he was a former board member and had held positions with both the debtor and the defendant creditor but failed to allege that he was a transferee. *Id.* at 53–54. The court agreed and held that the trustee's allegations were insufficient to state a constructive conveyance claim. *Id.* at 53–54 ("The Court agrees with Naples and concludes that the Trustee has failed to state a claim for any actual or constructive fraud against Naples and will grant the motion to dismiss as to that claim. As noted, the Trustee has not identified any transfer made to Naples. *Merely being an employee of a transferee is insufficient, without more, to establish that Naples was the transferee or benefitted from the transfer.*") (emphasis added).

Plaintiff's Amended Complaint here mirrors the allegations that the *Miller* court found insufficient to withstand dismissal. To be sure, the Amended Complaint states that Mr. Chalopin was the President of FBH at the time of the $11.5 million transfer, (Am. Compl. ¶ 53), but beyond this, it lacks any allegation that Mr. Chalopin received any part of the funds or benefited from the transfer in any way. Therefore, as in *Miller*, the fraudulent transfer claims against Mr. Chalopin must be dismissed. *See id.* at 54 ("Merely being an employee of a transferee is insufficient, without more, to establish that Naples was the transferee or benefitted from the transfer.").

### b. Plaintiff Has Failed to Plead Facts Sufficient to Show that Alameda was Insolvent at the Time of the FBH Investment.

In addition to identifying the relevant transferee, to survive dismissal, Plaintiff must also establish facts that plausibly demonstrate that Alameda was insolvent *at the time of the transfer*. *Jalbert v. Souza* (*In re F-Squared Inv. Mgmt., LLC*), No. 15-11469, 2019 Bankr. LEXIS 2817, at *43 (Bankr. D. Del. Sept. 6, 2019) (granting motion to dismiss and finding that plaintiff failed to plead insolvency requirement because complaint "[did] not contain any specific allegations regarding the debtors' assets or liabilities at the time of each transfer"). The Code defines "insolvency" as "the financial condition such that the sum of such entity's debts is greater than all

of such entity's property, at fair valuation." 11 U.S.C. § 101(32). Courts refer to this as the "balance sheet test." Whether an entity is insolvent must be determined at the time of the transfer. *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 648 (3d Cir. 1991).

Here, the Amended Complaint's "allegations" regarding Plaintiff's insolvency are not allegations at all. Rather, Plaintiff simply recites the elements of the underlying action and describes events that occurred in other proceedings not before this Court and attempts to pass them off as well-pleaded allegations. (Am. Compl. ¶ 46) ("Plaintiff was insolvent at all relevant times. As alleged in the superseding indictment of Bankman-Fried, the FTX empire was built on a house of cards"); (*Id.* ¶ 60) ("Plaintiff was also insolvent. Plaintiff's assets at the relevant time primarily included investments by FTX Insiders into tenuous and speculative ventures, which were worth only a fraction of the amounts invested. The fair value of these assets was substantially lower than the size of Plaintiff's liabilities"). Moreover, the Amended Complaint lacks specific allegations about Plaintiff's assets and liabilities at the time of the transfer—relying instead on only conclusory statements of Plaintiff's insolvency. (*See, e.g.,* Am. Compl. ¶¶ 61–62, 65). It is well settled that such allegations do not suffice. *See Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (explaining that "conclusory" or "bare-bones" allegations will not survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (quoting *Iqbal*, 556 U.S. at 677).

The Amended Complaint also includes contradictory allegations that further support dismissal of Plaintiff's claim. *See Scher v. Cent. Bank of India (In re Essar Steel Minn. LLC)*, No. 16-11626, 2020 Bankr. LEXIS 2902, at *6–7 (Bankr. D. Del. Oct. 15, 2020) ("A plaintiff may plead inconsistent facts in the alternative and still survive 12(b)(6), but 'contradictory allegations

sometimes are a reason to support dismissal.'"") (citing *JCF AFFM Debt Holdings, L.P. v. Affirmative Ins. Holdings, Inc. (In re Affirmative Ins. Holdings, Inc.*), 565 B.R. 566, 586 n.95 (Bankr. D. Del. 2017)). For example, the Amended Complaint states "[t]he FTX Insiders concealed the FTX Group's . . . insolvent state by raiding and misappropriating billions of dollars in cash, cryptocurrency, and other assets deposited by customers." (Am. Compl. ¶ 62). But Paragraphs 48 and 49 state that around July 2019, through the actions and at the direction of Bankman-Fried, "[Alameda] was able to maintain a negative balance on the exchange and utilize the exchange to trade and withdraw assets without limit, giving it a virtually unlimited 'line of credit'"). (Am. Compl. ¶ 64). It cannot be that Plaintiff had unlimited access to funds but was also insolvent.

As another example, the Amended Complaint alleges that Alameda was insolvent at all times because it was unable to pay its debts as they became due, (Am. Compl. ¶ 74), but this again is contradicted in a prior paragraph, which alleges—

> As of the commencement of the Chapter 11 Cases, the exchange's software had been tampered with to an extent sufficient to expand Alameda's "line of credit" to $65 billion. Alameda lacked the ability to repay this line of credit, having spent the money on insider transfers and purported "loans," gifts, and questionable investments, including the $11.5 million transferred to Defendants.

(Am. Compl. ¶ 64).

This statement shows that Alameda *could have* repaid the $65 billion line of credit, but "having spent the money on insider transfers and purported 'loans,' gifts, and questionable investments . . .", (*id.* at ¶ 64), it was unable to do so.

Since the inception of the above-captioned bankruptcy case, Debtors (which includes Plaintiff) have continued to operate as debtors in possession. Unlike a trustee, Plaintiff is not restrained by limited access to the Debtors' books, records, and financial statements. Rather,

Plaintiff is in the best position to prove the insolvency requirement. Thus, Plaintiff could – but has failed to – plead plausible facts sufficient to show insolvency. *See Miller*, 386 B.R. at 44 (explaining "[a] bankruptcy trustee, as a third-party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud").  No such "liberality" has been given to a debtor in possession because, as a party to transactions that dictate the debtor's assets and liabilities, a debtor is in the best position to access and disclose its financial information. Furthermore, such liberality certainly should not be given to a debtor that, by Plaintiff's own acknowledgement, did not maintain critical financial records involving its assets and liabilities. (*See* Am. Comp. ¶¶ 11, 29) (alleging that "Alameda . . . failed to maintain appropriate records and did not implement sufficient internal controls or risk management.").  Plaintiff's failure to responsibly manage and oversee its day-to-day operations—including maintenance of appropriate books and records—does not lower the pleading standard for Plaintiff.

### c.  Plaintiff Has Failed to Plead Facts Sufficient to Show that it Received Less than "Reasonably Equivalent Value."

Lastly, the Amended Complaint lacks allegations that plausibly demonstrate that Plaintiff received less than "reasonably equivalent value." A party receives "reasonably equivalent value" if it receives roughly the value that it gave. *Pension Transfer Corp. v. Beneficiaries under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 212–13 (3d Cir. 2006).  To determine whether a plaintiff has pleaded facts sufficient to show "reasonably equivalent value," the court must first assess whether any "value" was exchanged; if that is shown, the court must then assess whether the value conferred was the "reasonably equivalent value" for what was given. *Id.*   Under this analysis, even the "mere opportunity" to receive an economic benefit in the future constitutes "value." *Mellon Bank, N.A. v. Off. Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)*, 92 F.3d 139, 148 (3d Cir. 1996).

In *Mellon*, the Third Circuit answered the same question presented in this case: "[H]ow to determine whether an investment that failed to generate a positive return nevertheless conferred value on the debtor." *Id.* at 152. The court explained that if there is some chance that a contemplated investment will succeed at the time of transfer, then reasonably equivalent value has been conferred. *Id.* (finding "because legalized gambling provides a fair chance for significant pay-off, $7,710 in gambling losses conferred value on debtor") (citing *Allard v. Flamingo Hilton (In re Chomakos)*, 69 F.3d 769, 771 (6th Cir. 1995)).

Here, the Amended Complaint alleges that because Plaintiff's investment was more than the alleged market value of Farmington, Plaintiff did not receive reasonably equivalent value for its investment. (Am. Compl. ¶ 88). This single, conclusory allegation is insufficient to plead the reasonable equivalent value element. *See, e.g.*, *Aphton Corp. v. Sonafi Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 89 (Bankr. D. Del. 2010) (noting that "courts have rejected the application of any fixed mathematical formula to determine reasonable equivalence"). This allegation also overlooks the very reason Plaintiff sought to invest in the beginning—to participate in the renewal of a small, single-branch community bank into a newly improved bank, offering cutting-edge services.

The Examiner's Report explained that Plaintiff was aware of Farmington's capabilities and that the FBH Investment would fund the "development of a cryptocurrency staking program." *See In re FTX Trading LTD, et al.*, No. 1:22-bk-11068 (JTD) (Bank. D. Del.), D.I. 15545. This shows that Plaintiff's benefit was beyond Farmington's monetary value. Rather, Plaintiff paid $11.5 million for *the opportunity* to help create a new cryptocurrency program—not just the 10% interest received in Farmington. Thus, not only did Plaintiff receive "value" for what it gave, but it received *the reasonably equivalent value* of what it gave—namely, the opportunity to be a part of a

13

transformation of a small, community bank into a full-service bank offering cutting edge products and services like those involving cryptocurrency.

Plaintiff attempts to present the narrative as one where Defendants "tricked" it into investing in FBH, but the Amended Complaint and the Agreement, which Plaintiff signed, refute this theory. For example, the Agreement clearly states that approval from the Federal Reserve was required before Farmington could implement its new business plan, and that the Federal Reserve may not approve the business plan at all. *See* Exhibit A, Subscription Agreement § 4.5.

Further, the Amended Complaint alleges that the value of Farmington was significantly less than the amount invested in FBH, relying on references to Farmington's "reported" value which confirms that Plaintiff had access to this information and therefore was fully aware of what it was purchasing. (*See* Am. Compl. ¶¶ 5, 82, 88) ("Around the time of [Plaintiff's] investment in FBH, Farmington was the nation's 28th smallest bank by assets and its *reported* net worth was $5.7 million, meaning [Plaintiff] paid an amount equal to double the bank's entire reported net worth for just a 10% interest."). Moreover, the Amended Complaint alleges that the FTX Debtors, which include Plaintiff, facilitated questionable investments, (*see* Am. Compl. ¶ 64), and, in doing so "failed to perform traditional due diligence, or maintain the files relating to such diligence in an organized fashion, or at all." (Am. Compl. ¶ 11). However, Plaintiff's alleged lack of due diligence does not equate to fraud or misrepresentation by Defendants, particularly where, as here, there is unambiguous evidence that Defendants disclosed the very facts Plaintiff claims were concealed or misrepresented. (Am. Compl. ¶ 11).

In sum, Plaintiff's claim that Defendants swindled Plaintiff out of $11.5 million is entirely baseless. The Agreement, the Examiner's Report, and Plaintiff's own Amended Complaint clearly show that Defendants were transparent about their business plan and the need for Federal Reserve

14

approval, and that Farmington's financial products and services were disclosed and reasonably known (or should have been known) by Plaintiff. Thus, any harm Plaintiff claims to have suffered stems directly from its own fraudulent actions. Plaintiff not only caused harm to itself, but it also took Farmington down with it. Rather than accept responsibility, Plaintiff attempts to evade the consequences of its actions, as shown by initiating this adversary proceeding.

For all these reasons, the Court should find that Plaintiff has failed to plead facts sufficient to establish that Plaintiff did not receive the reasonable equivalent value of its investment.

### C.     The FBH Investment Is Unavoidable Because It Falls Under the Safe Harbor Provision.

Counts III and IV also must be dismissed because the FBH Investment is a "securities transaction" protected by Section 546(e), which provides, in pertinent part, that "the trustee may not avoid a transfer that is a . . . settlement payment, as defined by section 101 or 741 of [the Bankruptcy Code], made by or to a . . . financial institution." 11 U.S.C. § 546(e). To establish that this provision applies, Defendants need only establish two elements: (1) that the subject transfer qualifies as a "settlement payment" or payment made in connection with a securities contract (*i.e.*, a qualifying transaction,) and (2) that the transfer was made by or to a financial institution (*i.e.*, a qualifying participant). *Brandt v. B.A. Capital Co. (In re Plassein Int'l Corp.)*, 366 B.R. 318, 323 (Bankr. D. Del. 2007). Although this safe harbor often involves a fact-intensive analysis, where, as here, it is clear from the face of the Amended Complaint that the provision applies, a motion to dismiss may be appropriately granted. *Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504, 515 (Bankr. D. Del. 2012) ("Courts in this district have considered the 546(e) defense at the motion to dismiss stage where the defense is clearly established on the face of the complaint") (citing *Brandt*, 366 B.R. at 323–25.).

### 1.    The FBH Investment Qualifies as a Settlement Payment.

The Code defines "securities contract" as "a contract for the purchase, sale, or loan of a security . . .," 11 U.S.C. § 741(7)(A), and a "settlement payment" as a settlement payment or "any other similar payment commonly used in the securities trade," 11 U.S.C. § 741(8). The Third Circuit has adopted a broad interpretation of "settlement payment." *See generally Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 515 (3d Cir. 1999) (agreeing with courts that describe the definition of "settlement payment" for purposes of section 546(e) as "extremely broad") (citing *Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer Sav. & Loan Ass'n,* 878 F.2d 742, 751 (3d Cir. 1989)); *see also Walsh v. The Toledo Hosp. (In re Financial Mgmt. Sciences)*, 261 B.R. 150, 154-56 (Bankr. W.D. Pa. 2001) (explaining that "the scope of the term 'settlement payment' is extremely broad").

Here, Plaintiff alleges that it wired Farmington $11.5 million for the purchase of 110,000 shares of stock in FBH.  (Am. Compl. ¶¶ 52, 62). This transfer falls squarely within the definition of "settlement payment" because Plaintiff made the transfer according to the Agreement.  *See, e.g.*, *Off. Comm. of Unsecured Creditors v. Fleet Retail Fin. Grp. (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 86–87 (Bankr. D. Del. 2002) (holding that the purchase of stock in connection with a leveraged buyout qualified as a "settlement payment" for purposes of the § 546(e) safe harbor) (citing *Lowenschuss (In re Resorts Int'l)*, 181 F.3d at 515–16). Therefore, the first element of the safe harbor analysis is satisfied.

### 2.    Farmington is a "Financial Institution."

The Code defines "financial institution" as "a federal reserve bank, or an entity that is a commercial or savings bank . . ." 11 U.S.C. § 101(22). The Amended Complaint confirms that there is no dispute that Farmington is a "financial institution" under Section 101(22). (*See* Am.

Compl. ¶ 20) ("Defendant Farmington was a one branch state-member bank located in Farmington, Washington. Upon information and belief, from 1929 until the events giving rise to this complaint, the Bank operated as a one-branch bank serving a rural community in Washington by providing traditional bank accounts and loans to residents of Farmington and various farming operations").

In sum, it is clear from the face of the Amended Complaint that the FBH Investment falls under the safe harbor provision established under § 546(e) and is an unavoidable transfer. As such, dismissal of Plaintiff's fraudulent conveyance claims is appropriate.

D.     **Plaintiff Has Failed to Establish Personal Jurisdiction Over Mr. Chalopin for any Claims Against Him.**

Plaintiff's claims against Mr. Chalopin individually (Counts II, IV, V, and VI of the Amended Complaint) should be dismissed for the additional and independent reason that Plaintiff has failed to establish that this Court has personal jurisdiction over Mr. Chalopin.

Personal jurisdiction over a defendant can be general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction exists when the plaintiff's alleged harm arises from the defendant's "continuous and systematic" contacts with the forum. *See generally Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). In contrast, specific jurisdiction is limited and focuses solely on the relationship between the defendant's conduct alleged to have caused the plaintiff's harm and the forum. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ("due process requires only that . . . [the defendant] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'"); *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (explaining that whether a forum can exercise specific jurisdiction over a non-resident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'").

Once a defendant raises a proper challenge to personal jurisdiction, the plaintiff bears the burden of establishing that personal jurisdiction exists. *Time Share Vacation Club v. Atlantic Resorts Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). This requires more than simply pleading facts that allege personal jurisdiction—a plaintiff must prove that personal jurisdiction exists over *each* defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 n.1 (3d Cir. 2004) (explaining that "a court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis"); *Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*, No. 04-10322 (MFW), 2006 Bankr. LEXIS 2443, at *7 (Bankr. D. Del. Oct. 2, 2006) (citing *Stranahan Gear Co. v. NL Indus., Inc.*, 800 F.2d 53, 58–59 (3d Cir. 1986) (explaining that once a defendant properly challenges personal jurisdiction, the plaintiff cannot rely on the allegations in the complaint.  Rather, the plaintiff must present "actual proof of the defendant's minimum contacts sufficient to establish personal jurisdiction")).

Here, the Amended Complaint correctly alleges that Mr. Chalopin is a resident of the Bahamas, (Am. Compl. ¶ 22), but it fails to allege that Mr. Chalopin engaged in continuous and systematic contacts with the United States in a way that makes him "at home." As such, Plaintiff has failed to establish specific jurisdiction.

### 1.    This Court Lacks Personal Jurisdiction Over Mr. Chalopin for the Bankruptcy-Related Claims (Counts II and IV).

Bankruptcy Rule of Federal Procedure 7004(d) is the statutory basis for a bankruptcy court's jurisdiction.  Fed. R. Bankr. P. 7004(d).  Because Rule 7004(d) provides for nationwide service of process, the relevant forum is not a particular state, but the United States.  Fed. R. Bankr. P. 7004(d).  Therefore, Plaintiff must establish two things: (1) that Mr. Chalopin has sufficient minimum contacts with the United States, and (2) that requiring Mr. Chalopin to litigate in the United States is fair.  *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 365, 369 (3d Cir. 2002).

Minimum contacts exist upon a showing that "the defendant's *suit-related* conduct [created] a substantial connection with the forum . . ." *Walden*, 571 U.S. at 284 (emphasis added). Furthermore, the relationship between the defendant and forum must arise from contacts created by the "defendant himself[.]" *Id.* (explaining that the court has consistently rejected allegations that attempt to satisfy the "defendant-focused" minimum contacts element—underscoring the proposition that it is the defendant himself who must have the requisite "minimum contacts" with the forum) (citing *Helicopteros*, 466 U.S. at 417).

Here, the Amended Complaint broadly alleges (without support) that Mr. Chalopin was aware that "Legal Officer-1 resided in the United States" and that "[o]n information and belief," he met with Legal Officer-1 while physically present in the United States. (Am. Compl. ¶ 51). Relevant case law confirms that these assertions, which focus only on a connection to a specific individual rather than to the forum itself, do not establish specific jurisdiction over Mr. Chalopin.

For example, in *Giuliano v. Fleming (In re Nobilis Health Corp.)*, the court dismissed the claims against a Canadian citizen residing in Toronto, highlighting a crucial legal principle: merely holding a board position in a Canadian corporation—regardless of that corporation's connection to debtor entities in the United States—does not satisfy the "minimum contacts" necessary to establish personal jurisdiction. No. 19-12264 (CTG), 2022 Bankr. LEXIS 2057, at *24 (Bankr. D. Del. July 27, 2022). The court explained that the plaintiff failed to show that any significant actions or decisions occurred within the United States, thereby significantly undermining the case for jurisdiction. *Id.* at *25–26. The Amended Complaint here suffers from these same fatal deficiencies.

In a desperate attempt to find a deep pocket, Plaintiff attempts to establish minimum contacts by detailing purported business relationships between companies owned by Mr. Chalopin

and the broadly defined FTX Group (Am. Compl. ¶¶ 37–40).  For example, the Amended Complaint focuses on a relationship between nonparties Deltec International Group and Deltec Bank and Trust Company Limited (together, "Deltec") – both Bahamian entities – and the FTX Group, and claims that the "FTX Group, Chalopin, and Deltec created and maintained a symbiotic relationship in the years to come, often directly through Chalopin."  (Am. Compl. ¶ 39–40).  This is a baseless attempt to impute *Deltec's* contacts to Mr. Chalopin and, in any event, the relationship between Deltec and the FTX Group is irrelevant because Deltec is not involved in the *subject transaction* underlying this litigation.  *See, e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.,* 582 U.S. 255, 264 (2017) (explaining "for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State'" and further explaining "[w]hen no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.").  Plaintiff's inclusion of Deltec and its relationship with Mr. Chalopin and the FTX Group in the Amended Complaint is, at best, inconsequential—and, at worst, is entirely irrelevant because the Amended Complaint fails to make any allegation that connects Deltec to the subject transaction in this proceeding.

Nor can the Amended Complaint's references to Mr. Chalopin's signature (in his role as President of FBH) on the Agreement carry Plaintiff's burden to establish "minimum contacts." (Am. Compl. ¶ 53). First, the Amended Complaint lacks critical details regarding where Mr. Chalopin purportedly signed the Agreement and what connection, if any, the Agreement has to Delaware.  It is well-established that the mere existence or even fulfillment of a contract between a resident of the forum and a non-resident does not establish "minimum contacts" sufficient to prove personal jurisdiction. *See generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–80

(1985); *Epsilon Plastics, Inc. v. Goscin*, No. 05-4935 (JAG), 2006 U.S. Dist. LEXIS 17596 (D.N.J. Mar. 24, 2006) (dismissing claim for lack of personal jurisdiction and explaining that fulfillment of contractual obligations, without more, does not automatically establish sufficient minimum contacts with a forum for purposes of personal jurisdiction).

For all these reasons, the contacts described in the Amended Complaint—regardless of intent—clearly fall short of the "minimum contacts" that are required to find personal jurisdiction over Mr. Chalopin.

**2.  This Court Lacks Personal Jurisdiction Over Mr. Chalopin for the State Claims (Counts V and VI).**

The Amended Complaint also brings two state law claims against Mr. Chalopin: (1) one for aiding and abetting breach of fiduciary duty (Count IV), and (2) one for aiding and abetting waste of corporate assets (Count VI). Because these are brought under state law, this Court's statutory jurisdiction for these claims is Delaware's long-arm statute. Del. Code. Ann. Tit. 3, § 3104. To establish personal jurisdiction under Delaware's long-arm statute, Plaintiff – a Delaware entity (Am. Compl. ¶ 13) – must show that Defendants transacted business in, or directed their actions at, Delaware in such a way that they could reasonably foresee being sued in Delaware. *See* 10 Del. C. § 3104(c)(4); *HMG/Courtland Props., Inc. v. Gray* 729 A.2d 300, 310–11 (Del. Ch. 1999). Far from meeting that showing, the Amended Complaint contains no allegations that Mr. Chalopin ever visited Delaware, ever transacted business in Delaware, or ever directed any of his actions towards Delaware. In fact, the Amended Complaint contains *no* reference to Delaware whatsoever.

Based on the foregoing, all claims against Mr. Chalopin should be dismissed with prejudice.

### E. Plaintiff Has Failed to Plead Facts Sufficient to Support its Non-Bankruptcy Claims Against Mr. Chalopin (Counts V & VI).[9]

#### 1. Plaintiff Has Not Alleged Sufficient Facts to Pierce FBH's Corporate Veil in Order to Obtain Personal Liability Over Mr. Chalopin.

At their core, Plaintiff's allegations related to Mr. Chalopin rely on a singular transaction between the entity he is alleged to control (FBH) and the entity that Bankman-Fried allegedly controlled (Alameda). According to Plaintiff, Mr. Chalopin should be liable for his alleged actions, ***taken solely in his capacity as a principal of FBH***, to induce Alameda into investing in FBH, which Plaintiff argues was at an inflated value or was otherwise improper. (Am. Compl. ¶¶ 110, 114). Taking those allegations as true at this stage, it is clear that Plaintiff is solely alleging conduct that occurred between two legal entities (FBH and Alameda), yet it is requesting relief against Mr. Chalopin individually. In effect, these claims ask this Court to pierce the corporate veil and disregard FBH as a legal entity to hold Mr. Chalopin personally liable. But as explained below, Plaintiff has failed to allege any basis to pierce FBH's corporate veil.

Under Delaware law, "courts take the corporate form and corporate formalities very seriously" and disregard them only in the "exceptional case." *In re Worth Collection, Ltd*., 666 B.R. 726, 740 (Bankr. D. Del. 2024). Under that view, "piercing the corporate veil is a tough thing to plead and a tougher thing to get, and for good reason." *Id*. As such, in order to successfully assert a claim that warrants corporate veil piercing, there must be some allegation of fraud "or something like it" that would justify the disregard of the corporate form. *In re Foxmeyer Corp*., 290 B.R. 229, 236 (Bankr. D. Del. 2003). Critically, however, the allegations of fraud "or

---

[9] The Amended Complaint alleges that Mr. Chalopin aided and abetted in the breach of fiduciary duties owed to Plaintiff, a Delaware entity. (Am. Compl. ¶¶ 110, 114). As a Delaware entity, Plaintiff is subject to Delaware law. *See, e.g.*, *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1112 (Del. 2005) ("The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation"). Thus, the argument, here, applies Delaware law.

something like it" cannot just be in the conduct that gave rise to the underlying claim, but rather must "be found in the defendants use of the corporate form." *Id*. For that reason, "[t]he underlying cause of action, at least by itself, does not supply the necessary fraud or injustice" for veil piercing, and instead, there must be some allegation that the corporate form itself was used commit the fraud or injustice. *Id*.

Applied to Plaintiff's claims here, the Amended Complaint lacks allegations sufficient to warrant veil piercing. Reading Plaintiff's allegations most charitably, Plaintiff has alleged that FBH's[10] efforts to induce the $11.5 million investment from Alameda were improper, and that Plaintiff suffered damages as a result of Alameda's investments in FBH. But even accepting those allegations as true, that is not a ground to pierce FBH's corporate veil and hold Mr. Chalopin personally liable.  Indeed, there are no allegations that FBH's corporate form was used fraudulently, that FBH was Mr. Chalopin's alter ego, or that Mr. Chalopin used FBH's corporate form to perpetrate some injustice. Rather, Plaintiff's claims are simply that Mr. Chalopin, in his capacity as the principal of FBH, allegedly improperly induced Alameda to invest in FBH. That is not enough to give rise to personal liability against Mr. Chalopin.

### 2. Plaintiff Has Failed to State a Claim for Aiding and Abetting Breach of Fiduciary Duty (Count V).

To survive dismissal of a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege facts that satisfy four elements: "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendants, and (4)

---

[10] To be clear, the Amended Complaint artfully disregards FBH, and consistently frames actions taken as being done by "[Mr.] Chalopin." (Am. Compl. ¶¶ 47-51). But those allegations are all contained under the subheading that begins with "[Mr.] Chalopin earlier formed FBH, became its principal shareholder…and President, and orchestrated ***FBH's acquisition of Farmington***." *Id.* at ¶ 45 (emphasis added). Implicit in these allegations is that Mr. Chalopin, in undertaking the alleged conduct, was acting as a principal of FBH, and not as an individual subject to personal liability.

damages proximately caused by the breach." *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (citations omitted). The third element, which requires a showing of knowing participation by the defendant, is subject to the heightened pleading standard provided under Rule 9 of the Federal Rules of Civil Procedure. *See Cred. Inc. Liquidation Trust v. Uphold HQ Inc. (In re Cred. Inc.)*, 650 B.R. 803, 823 (Bankr. D. Del. 2023) (explaining that "scienter" is needed to establish the knowing participation element and specifically stating "[t]o establish scienter, the plaintiff must demonstrate that the aider and abettor had actual or constructive knowledge that their conduct was legally proper"). The Delaware Supreme Court consistently highlights the high burden a plaintiff must carry in trying to plead plausible facts that allow the court to infer the requisite scienter to show an aiding and abetting claim. *See, e.g.*, *SB Liquidation Tr. v. Preferred Bank (In re Syntax-Brillian Corp.)*, 573 F. App'x 154, 163 (3d Cir. 2014) (affirming the dismissal of claim for aiding and abetting breach of fiduciary duty and rejecting the plaintiff's attempt to support the knowledge requirement by implying that the defendant must have known about the alleged fraud due to the presence of suspicious circumstances).[11]

Here, the Amended Complaint details the mismanagement and misuse of FTX funds by Bankman-Friedman and other FTX Insiders.  (Am. Compl. ¶¶ 3, 33).  However, it does not include any allegations that support a showing that Mr. Chalopin knew of Bankman-Friedman's mismanagement or misuse.  In fact, the Amended Complaint here makes allegations eerily like those the Delaware Supreme Court rejected in the *Santa Fe Pacific* case. There, the Delaware

---

[11] *See also In re Volcano Corp. Stockholder Litig.*, 143 A.3d 727, 750 (Del. Ch. 2016) (referencing a previous opinion of the court and stating "in *Attenborough*, the Supreme Court reiterated the high burden that a plaintiff faces in attempting to plead facts from which a court could reasonably infer that a financial advisor acted with the requisite scienter for an aiding and abetting claim"); *see also Cred. Inc. Liquidation Trust*, 650 B.R. at 823 (explaining that "scienter" requires a plaintiff to establish the defendant's knowledge of the underlying breach *and* knowledge that its conduct is contributing to that breach—allegations attempting to impute knowledge solely based on suspicions circumstances are not enough).

Supreme Court confirmed the dismissal of a claim for aiding and abetting breach of fiduciary duty because the plaintiff's complaint contained only conclusory statements such as, the defendant "had knowledge of the [i]ndividual [d]efendants' fiduciary duties and knowingly and substantially participated and assisted in the Individual Defendants' breaches of fiduciary duty, and, therefore, aided and abetted such breaches of fiduciary duties described above." *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 72 (Del. 1995).  The Amended Complaint contains the same fatal pleading deficiency; it specifically states—

> Bankman-Fried breached his fiduciary duties by authorizing the wasteful investment into FBH.
>
> Chalopin aided and abetted Bankman-Fried in his breaches of fiduciary duties by inducing him to cause Alameda Research to invest into FBH at an inflated valuation.  As a direct and proximate result of Chalopin's aiding and abetting breaches of fiduciary duties, Plaintiff was damaged in an amount to be determined at trial.

(Am. Compl. ¶¶ 108–09).

The statement made in reference to Mr. Chalopin is conclusory, and while the Amended Complaint includes detailed information regarding Bankman-Friedman's mismanagement and misuse of the FTX Group's assets, it glaringly lacks *any* allegations regarding Mr. Chalopin's awareness of these actions.  Furthermore, there are no allegations that support any claim that Mr. Chalopin knowingly participated in any alleged breach of fiduciary duty. The omission of such allegations is fatal to Plaintiff's claim against Mr. Chalopin.  Beyond conclusory allegations, the Amended Complaint does not state a single allegation to show Mr. Chalopin "knowingly participated" in any alleged breach of fiduciary duty—just like the conclusory allegations the Delaware Supreme Court rejected in *Santa Fe Pacific Corp.*  Plaintiff's aiding and abetting breach of fiduciary duty claim warrants the same disposition and should be dismissed with prejudice.

    **3.**       **Plaintiff Has Failed to State a Claim for Aiding and Abetting Corporate Waste (Count VI).**

To adequately state a claim for aiding and abetting corporate waste, Plaintiff must plausibly allege that Mr. Chalopin not only had knowledge of the alleged corporate waste involving both the Plaintiff and the FTX insiders but also knowingly and willingly participated in this misconduct. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003).   The pleading standard for a corporate waste claim is high and rarely satisfied.   *See Giuliano*, 2022 Bankr. LEXIS 2057, at *19.  A corporate waste claim fails of the underlying entity received any benefit from the transaction or if the transaction is deemed worthwhile under the circumstances.   *Id.* at 20.  This is true even if it is later determined that the transaction was "unreasonably risky."  *Id.*  It is well-established under Delaware law that "a claim of corporate waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets."  *RPA Asset Mgmt. Servs., LLC v. Siffin (In re MTE Holdings LLC)*, No. 19-12269 (CTG), 2022 Bankr. LEXIS 2352, at *27 (Bankr. D. Del. Aug. 24, 2022).   Moreover, Delaware establishes a rigorous standard for such claims, effectively limiting the liability of directors and officers.  *See, e.g.*, *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988).

The Third Circuit's analysis in *Cognizant Technology Solutions Corporation Derivative Litigation* illustrates the application of this rigorous standard. There, the Third Circuit explained that corporate waste involves an exchange of corporate assets for consideration that is so disproportionately small that it lies beyond what any reasonable person would be willing to accept, essentially constituting a gift.  101 F.4th 250, 265 (3d Cir. 2024).  The court further clarified that proving such a claim is "*an onerous burden*" (emphasis added) and upheld the dismissal of a corporate waste claim because the plaintiff failed to allege facts demonstrating that the director-defendants had used corporate funds or assets for their own benefit. *Id.* There is nothing in the

Amended Complaint that meets this onerous burden because the investment was not so bereft as to be the equivalent of a gift.  Therefore, while Bankman-Friedman may have looted assets and acted criminally, the FBH investment was not an example of such.

Applying the standard above, the Amended Complaint fails to state a claim for corporate waste. This means that Plaintiff could not possibly plead a claim for *aiding and abetting* corporate waste because this claim requires an additional element of knowledge on the part of Mr. Chalopin. While the Amended Complaint details how Plaintiff, Bankman-Fried, and other FTX Insiders "looted" Plaintiff's assets, it does not allege that Mr. Chalopin had any knowledge of this mismanagement or misuse, which is required to demonstrate his contribution to the alleged waste. The Amended Complaint states that after receiving the $11.5 million investment, Farmington began transforming into a more comprehensive financial institution following the FBH Investment (Am. Compl. ¶ 54).  This allegation also does nothing to show that Mr. Chalopin had the knowledge of Bankman-Fried's mismanagement and personal use of FTX funds, and it certainly does not show that Mr. Chalopin possessed the requisite scienter to support an aiding and abetting corporate waste claim.  In fact, the allegation in Paragraph 54 directly undermines the Plaintiff's argument, as it was clearly the intended and mutually agreed-upon purpose of the funds to enhance the capabilities of Farmington.

In sum, Plaintiff has failed to plead facts sufficient to state a claim for aiding and abetting corporate waste and includes contradicting allegations that the Court need not accept.  Therefore, Count VI should be dismissed.

## IV.   <u>CONCLUSION</u>

This Amended Complaint is Plaintiff's way of attempting to distract the Court with irrelevant and immaterial facts.  Defendants respectfully urge the Court to filter through the

distractions that plague the Amended Complaint and hold Plaintiff to its burden of proving personal jurisdiction, by dismissing the Amended Complaint in its entirety and with prejudice for failure to allege facts sufficient to state a claim for any of the relief sought.

Dated: April 18, 2025
        Wilmington, Delaware

                       Respectfully submitted,

                       FAEGRE DRINKER BIDDLE & REATH LLP

                       */s/ Brett D. Fallon*
                       Brett D. Fallon (Del. Bar No. 2480)
                       222 Delaware Avenue, Suite 1410
                       Wilmington, DE 19801
                       Telephone: (302) 467-4200
                       Facsimile:  (302) 467-4201
                       brett.fallon@faegredrinker.com

                             - and –

                       BAKER, DONELSON, BEARMAN,
                       CALDWELL & BERKOWITZ, PC

                       Ty Kelly Cronin (*pro hac vice*)
                       100 Light Street, 19th Floor
                       Baltimore, Maryland 21202
                       Telephone: (410) 862-1049
                       tykelly@bakerdonelson.com

                       Destiney Parker-Thompson (Del. Bar. No. 7479)
                       2235 Gateway Access Point, Suite 220
                       Raleigh, NC 27607
                       Telephone: (984) 844-7900
                       dparkerthompson@bakerdonelson.com

                       *Attorneys for Defendants*