# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| **Debtors.** | |
| FTX RECOVERY TRUST, | |
| **Plaintiff,** | Adv. Proc. No. 24-50197 (KBO) |
| FARMINGTON STATE CORPORATION (f/k/a FARMINGTON STATE BANK, d/b/a GENIOME BANK, d/b/a MOONSTONE BANK), FBH CORPORATION, and JEAN CHALOPIN, | |
| **Defendants.** | |

## DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF OPPOSING DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

FAEGRE DRINKER BIDDLE & REATH LLP
Brett D. Fallon (Del. Bar No. 2480)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
brett.fallon@faegredrinker.com

-and-

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Ty Kelly Cronin (*pro hac vice*)
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Telephone: (410) 862-1049
tykelly@bakerdonelson.com

Destiney Parker-Thompson (Del. Bar. No. 7479)
2235 Gateway Access Point, Suite 220
Raleigh, NC 27607
Telephone: (984) 844-7900
dparkerthompson@bakerdonelson.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

I.     INTRODUCTION. ............................................................................................... 1

II.    ARGUMENT. ....................................................................................................... 1

    A.    Plaintiff Has Failed To Identify A "Triggering Creditor" Under § 544(b).............. 1

    B.    Plaintiff Has Failed to State a Claim for Fraudulent Conveyance Against Any Defendant. .......................................................................................... 2

        i.    Mr. Chalopin was not a transferee or beneficiary. ...................................... 2

        ii.    Plaintiff fails to sufficiently plead insolvency............................................ 4

    C.    The Safe Harbor Provision Applies Because the Bank is a Financial Institution. ........................................................................................... 6

    D.    Plaintiff Has Failed to Plead Facts Sufficient to Show That the Court has Sufficient Personal Jurisdiction Over Chalopin....................................... 7

        i.    Plaintiff has failed to prove the threshold element to establish personal jurisdiction.................................................................... 7

        ii.    Even if service was effectuated, Plaintiff fails to establish "minimum contacts" by Mr. Chalopin. ...................................... 8

    E.    Plaintiff's Non-Bankruptcy Claims Fail to Allege Plausible Claims Against Chalopin in his Personal Capacity........................................... 10

        i.    Plaintiff Has Not Alleged Facts Sufficient to Disregard FBH as a Corporate Entity. ............................................................... 10

        ii.    Plaintiffs Have Failed to Plead Chalopin Aided and Abetted a Breach of Fiduciary Duties. ................................................... 11

        iii.    Plaintiffs Have Failed to Plead Aiding and Abetting Corporate Waste.................................................................................. 13

CONCLUSION................................................................................................ 15

DMS_US.371385526.1

## TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page(s)**

*In re Answers Corp. S'holder Litig.*,
    2012 WL 1253072 (Del. Ch. Apr. 11, 2012) ........................................................................12

*Antico Vacca Techs., Inc. v. Bayer Corp. (In re Gruppo Antico, Inc.)*,
    2004 Bankr. LEXIS 2161 ............................................................................................8

*In re Buckhead Am. Corp., The Official Comm. of Unsecured Creditors of
    Buckhead Am. Corp. v. Reliance Capital Group*,
    178 B.R. 956 (Bankr. D. Del. 1994) .......................................................................3

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*,
    779 F.3d 214 (3d Cir. 2015)........................................................................................9

*In re DSI Renal Holdings, LLC*,
    574 B.R. 446 (Bankr. D. Del. 2017) .......................................................................14

*Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.*,
    251 A.3d 212 (Del. Ch. 2021)...................................................................................13

*Gavin Solmonese, LLC v. Shyamsundar (In re AmCad Holdings, LLC)*,
    579 B.R. 33 (Bankr. D. Del. 2017) .........................................................................5

*Giuliano v. Ferdinand (In re Liquid Holdings Grp., Inc.)*,
    2018 Bankr. LEXIS 2650 (Bankr. D. Del. Sept. 4, 2018) ........................................2

*Hahn v. Hahn (In re Hahn)*,
    2013 Bankr. LEXIS 3670 (Bankr. N.D. Ind. Jan. 22, 2013) ...................................7

*Helicopteros Nacionales de Colombia*, 466 U.S. 408 at 417 (1984)..............................8

*Hospitalists of Delaware, LLC v. Lutz*,
    No. CIV.A. 6221-VCP, 2012 WL 3679219 (Del. Ch. Aug. 28, 2012)...................12

*Int'l Shoe*, 444 U.S. 286 (1980)........................................................................................8

*Jalbert v. Souza (In re F-Squared Inc. Mgmt., LLC)*,
    2019 Bankr. LEXIS 2817 (Bankr. D. Del. Sept. 6, 2019) ...................................4, 5

*Miller v. Welke (In re United Tax Grp., LLC)*,
    2016 Bankr. LEXIS 4322 (Bankr. D. Del. Dec. 13, 2016).......................................4

*In re MTE Holdings LLC, No. 19-12269 (CTG)*,
    2024 WL 3272224 (Bankr. D. Del. July 1, 2024)................................................3, 4

ii

*Pardazi v. Cullman Med. Ctr.*,
  896 F.2d 1313 (11th Cir. 1990) ................................................................7

*Prairie Cap. III, L.P. v. Double E Holding Corp.*,
  132 A.3d 35 (Del. Ch. 2015) .........................................................10, 11

*RPA Asset Mgmt. Servs., LLC v. Siffin (In re MTE Holdings LLC*),
  No. 19-12269 (CTG), 2022 Bankr. LEXIS 2352 (Bankr. D. Del. Aug. 24,
  2022) ..................................................................................................13

*In re Uni-Marts, LLC*,
  404 B.R. 767 (Bankr. D. Del. 2009) ...........................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................8

*In re Wonderwork, Inc.*,
  611 B.R. 169 (Bankr. S.D.N.Y. 2020) ......................................................14

*In re World Health Alternatives, Inc.*,
  385 B.R. 576 (Bankr. D. Del. 2008) .........................................................14

**Statutes, Rules & Regulations**

11 U.S.C. § 546(e) ......................................................................................6

11 U.S. Code § 544(b) ............................................................................1, 2

Fed. R. Civ. P. 4 ........................................................................................7

Fed. R. Civ. P. 4(f) .....................................................................................7

Fed. R. Civ. P. 7004 ...................................................................................7

Rule 9(b) ...................................................................................................11

**Other Authorities**

https://assets.hcch.net/docs/960b1b52-eda0-4112-aeba-36f5d321beca.pdf ....................................7

Plaintiff Has Failed To Identify A "Triggering Creditor" .............................................1

## I.      **INTRODUCTION.**

Plaintiff goes to great lengths to turn an ordinary and routine investment into a (now defunct) Washington state bank into a far-reaching conspiracy, involving deception, illicit favor-trading, "improper inducements," and a quid pro quo. The motive for the Plaintiff's story telling is clear: to find a deeper pocket than the now defunct bank by calling Jean Chalopin an "aider and abettor" of FTX's immense Ponzi-scheme, regardless of whether or not the public record –or the truth - on this scandal actually ties that individual to the underlying fraud. Plaintiff has targeted Mr. Jean Chalopin ("Mr. Chalopin"), the investee bank's founder and shareholder, as the deeper pocket here with unfounded claims.

The Court should dismiss all claims against Mr. Chalopin, who is a Bahamian citizen not subject to this Court's jurisdiction and not an appropriate defendant in this ordinary fraudulent conveyance action. Further, Plaintiff's tort claims against Mr. Chalopin cannot survive, as there are no allegations sufficient to warrant personal liability for a legal corporate transaction between two entities. Plaintiff's claims against FBH Corporation ("FBH") and Farmington State Bank ("Farmington" or the "Bank") fare no better, as the Amended Complaint merely obfuscates the required elements of its fraudulent conveyance claim with details of an elaborate fraud tying them in on only on imagination and speculation. For those reasons, and those stated more fully below, this Court should grant the Defendant's Motion to Dismiss.

## II.      **ARGUMENT.**

### A.      **Plaintiff Has Failed To Identify A "Triggering Creditor" Under § 544(b).**

Plaintiff argues that it has satisfied the pleading standard for a § 544(b) claim by simply alleging that the "Transfer is avoidable by creditors who hold allowable unsecured claims, including creditors who were creditors before the transfer and creditors who were creditors on the

Petition Date." (Am. Comp at 8). However, Plaintiff falls short of satisfying the pleading standard

as they failed to plead any facts inferring the existence of a "triggering creditor." Plaintiff curiously

relies on *Giuliano* to argue they have met the "triggering creditor" requirement, but a review of

that decision actually demonstrates why Plaintiff's claims here are deficient. *Giuliano v. Ferdinand

(In re Liquid Holdings Grp., Inc.)*, 2018 Bankr. LEXIS 2650 (Bankr. D. Del. Sept. 4, 2018)

(granting the defendants' motion to dismiss a § 544(b) claim because the trustee's allegations fell

"well short" of the pleading requirements to show the existence of a triggering creditor). Contrary

to Plaintiff's Opposition, *Giuliano* makes clear that to plausibly plead a 544(b) claim, a plaintiff

must plausibly allege that there is a creditor holding an allowable unsecured claim on the petition

date *and* that such a creditor could have asserted a fraudulent transfer claim against the Defendants

if there were no bankruptcy case.  *Id.* at *6.

      Here, the statements on which Plaintiff relies to satisfy the "triggering creditor"

requirement are the exact type of conclusory statements that this Court rejected in *Giuliano*.  *See

Giuliano*, 2018 LEXIS 2650, at *6 (finding that the trustee's allegation that "at all times material

hereto, [the debtor] had at least one creditor prior to making the Transfers" fell "well short" of the

pleading requirements). These statements are all conclusory recitations of the elements, just like

the trustee's statements in the *Giuliano* case. *Id*. at *6 ("The complaint must allege facts 'sufficient

to show that the plaintiff has a plausible claim for relief."). As such, Plaintiff's 544(b) claim should

suffer the same fate as the *Giuliano* trustee—dismissal.

## B.    Plaintiff Has Failed to State a Claim for Fraudulent Conveyance Against Any Defendant.

### i.    *Mr. Chalopin was not a transferee or beneficiary.*

      Conceding that he is not a transferee, Plaintiff argues that Mr. Chalopin's alleged ownership

and control of FBH and the Bank, makes him a "beneficiary" of the transfer.  (Opp. Br. at 9).

DMS_US.371385526.1

Plaintiff's own cases, however, along with others in this jurisdiction, clearly show that an individual only becomes a beneficiary if that individual receives some portion of the funds or identifiable benefit from the transfer. *See, e.g.*, *In re Buckhead Am. Corp., The Official Comm. of Unsecured Creditors of Buckhead Am. Corp. v. Reliance Capital Group*, 178 B.R. 956, 961-962 (Bankr. D. Del. 1994) (allowing a fraudulent conveyance claim to go forward against individual defendants who owned and operated the debtor because the defendants were direct recipients of funds used to purchase the shares of the debtor's parent company); *In re MTE Holdings LLC*, *No.* 19-12269 (CTG), 2024 WL 3272224 at *8 (Bankr. D. Del. July 1, 2024) (allowing a fraudulent conveyance claim against the debtor's CEO to go forward because the funds from the transfer in question were designed to be paid to the CEO in the form of commissions).

Plaintiff's reliance[1] on the *MTE* decision is misplaced. In that case, the transfers in question were "cash payments" being made for the purpose of compensating a CEO. *Id*. at *4.   The individual CEO acknowledged that the transfers were intended to be for his personal benefit and were based on "his own assessment of the value of the work that he performed" on behalf of the Plaintiff. *Id*. at *5. Moreover, and as the CEO himself acknowledged, under the terms of certain operative loan documents, he was actually not entitled to compensation for his work serving as CEO, and therefore was attempting to use these transfers as an end-around method for personal payment. *Id*.  The *MTE* court was clear that "[t]here is no dispute that Siffin is the person for whose benefit the transfer was made." *Id*. at *8. Critically, however, that determination was not based on the CEO's status as the sole member of a pass-through entity, but rather, was based on the undisputed evidence that the transfers themselves were compensation to the CEO. *Id*.

---

[1]    Despite being a decision from this Court, the *MTE* decision was interpreting a fraudulent conveyance claim under Texas law. *Id*. at *1.

Conveniently, Plaintiff neglects to mention that critical fact. When viewed in full context, the *MTE* decision actually underscores why Plaintiff's claims fail here. Unlike the claims in *MTE*, there are no allegations that Mr. Chalopin ever received any portion of the transferred funds, either as a pass through or beneficiary, or that the funds were ever intended to be directed to Mr. Chalopin the individual. In fact, the Subscription Agreement clearly states that the $11.5 million was to be paid to Farmington State Bank as the "Beneficiary Bank." (Subscription Agreement § 2.1(b)). Thus, the Subscription Agreement[2] and Amended Complaint together make it clear that the Bank is the sole transferee and beneficiary of the transfer. Therefore, Plaintiff has failed to sufficiently plead that Mr. Chalopin was a transferee or beneficiary of the transfer and Counts III and IV should be dismissed against him with prejudice.

### ii. *Plaintiff fails to sufficiently plead insolvency.*

Plaintiff also argues that at the motion to dismiss stage, Plaintiff need only allege that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent. (Opp. Br. at 9). This argument is wrong, more is required. *See Jalbert v. Souza (In re F-Squared Inc. Mgmt., LLC)*, 2019 Bankr. LEXIS 2817, at *44 (Bankr. D. Del. Sept. 6, 2019) (finding that the trustee failed to sufficiently plead the insolvency element for constructive fraudulent conveyance and disagreeing with any cases that simply parroting the statute was sufficient to plead insolvency); *see also Miller v. Welke (In re United Tax Grp., LLC)*, 2016 Bankr. LEXIS 4322, *8–9 (Bankr. D. Del. Dec. 13, 2016) (finding that the trustee's statement that "the Debtor's records, including the Debtor's tax returns, suggest that the Debtor was insolvent on a "balance sheet" basis

---

[2]    Since Plaintiff expressly references the Subscription Agreement in their Amended Complaint, the Court can consider the agreement in the context of a motion to dismiss, and to the extent there is a conflict between Plaintiff's allegations and the text of the agreement, the agreement's language prevails. See, e.g., *Aphton Corp.*, 423 B.R. 76 at 91 (dismissing a fraudulent conveyance claim against a defendant because documents referenced in the complaint contradicted the allegations in the complaint and further explaining that because the document controlled, the court need not accept the allegations in the complaint as true).

4

at the beginning and end of [certain] calendar year(s)" was conclusory and failed to sufficiently plead the insolvency element).

While Plaintiff is not required to *prove* that Alameda was insolvent at this stage of the litigation, they still must sufficiently allege it. *Jalbert* at *45–46 (dismissing certain claims in an avoidance action because the trustee failed to sufficiently plead insolvency and explaining that the trustee's detailed allegations regarding the debtor's "enormous" "liabilities," indulgence in securities fraud, and SEC investigations into the debtor's clients, though accurate, were insufficient to allege insolvency because all of the events detailed by the trustee occurred *after* the transfer were made); *compare with Gavin Solmonese, LLC v. Shyamsundar (In re AmCad Holdings, LLC)*, 579 B.R. 33, 39-40 (Bankr. D. Del. 2017) (denying a motion to dismiss certain claims in an avoidance action and finding that the trustee sufficiently pled the insolvency element via their reliance on a declaration from the entity's president that "[p]roper accounting practices [ ] would have shown that the Debtor was insolvent" during the relevant period and noting that testimony from an officer of the Debtor with "direct knowledge of its financial position" was sufficient to allege insolvency ).

Here, Plaintiff is not at all like the liquidating trustee in *Gavin Solmonese* as they do not allege that Alameda was insolvent at any particular time before the FBH Investment was made. Rather, like the *Jalbert* trustee, Plaintiff attempts to circumvent the pleading standard by overwhelming the court with egregious details regarding the fraudulent conduct of FTX Insiders, without any allegations relevant to insolvency. (Am. Comp. ¶ 33) (stating "[t]he Exchanges . . . funded billions . . . in purported "venture" investments, real estate purchases, purported personal "loans," charitable and political contributions and all manner of other transfers designed to benefit themselves by buoying their lifestyles"). The Subscription Agreement was executed in January

5

2022, which is eleven months before the alleged insolvency in November of 2022, yet Plaintiff makes no attempt to account for that gap in time. Plaintiff's failure to allege events that caused Alameda's insolvency prior to the investment is fatal to its 544(b) claim, and it should be dismissed.

       **C.**       **The Safe Harbor Provision Applies Because the Bank is a Financial Institution.**

Plaintiff next argues that the safe-harbor provision is not applicable because they allege that the transfer was made to FBH, not Farmington, and therefore was not a payment "to a financial institution." (Opp. Br. at 14). This is a red herring. The safe harbor provision makes clear that a transfer to *(or for the benefit of)* a financial institution is not avoidable. 11 U.S.C. § 546(e)(emphasis added). The plain language of the Subscription Agreement[3] makes clear that the transfer at issue was always being directed to Farmington State Bank as the "Beneficiary Bank" (Subscription Agreement, § 2.1(b)) so this clearly makes the transfer either to, or for the benefit of, Farmington, which is indisputably a financial institution. Plaintiff relies on the Subscription Agreement throughout the Amended Complaint when it suits them, so they cannot now ask the Court to ignore it by pleading only half of the facts around the investment. This fact is further supported by the Plaintiff's own claims, which are brought against "Defendants," which, of course, includes Farmington. Therefore, the transfer at issue was made to or for the benefit of a financial institution, and the safe harbor provision clearly applies.

---

    [3]   *See supra* footnote 2.

DMS_US.371385526.1

**D.** **Plaintiff Has Failed to Plead Facts Sufficient to Show That the Court has Sufficient Personal Jurisdiction Over Chalopin**

    *i.*     *Plaintiff has failed to prove the threshold element to establish personal jurisdiction*

Once personal jurisdiction has been challenged, the burden shifts to the plaintiff to prove that personal jurisdiction exists over every defendant in the case. To meet this burden, the plaintiff must prove two elements: (1) proper service in accordance with Federal Bankruptcy Rule 7004, or waiver, and (2) the existence of sufficient minimum contacts with the United States. *See* Bankr. R. Fed. P. 7004(d), (f).[4]  Plaintiff concedes that Mr. Chalopin is a non-U.S. resident and does not allege that Mr. Chalopin was served within the United States.

Rule 4 states that service must be completed in accordance with an internationally agreed-upon method of service if one exists (Fed. R. Civ. P. 4(f)).  Both the United States and the Bahamas are parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention")[5] and Mr. Chalopin needed to be served by Plaintiff in accordance therewith. Plaintiff has failed to do so.[6]  Conceding as such, Plaintiff's Opposition skips directly to the concept of minimum contacts, overlooking the threshold service requirement necessary to confer personal jurisdiction in the bankruptcy court. *See, e.g.*, *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that

---

[4]    Rule 7004 specifically states, "[i]f exercising jurisdiction is consistent with the United States Constitution and laws, serving a summons or filing a waiver of service under this Rule 7004 or the applicable provisions of Fed. R. Civ. P. 4 *establishes* personal jurisdiction over a defendant . . ." (Bankr. Fed. R. 7004(f))(emphasis added).

[5]    *See* official Hague Convention member list, which the Court may judicially notice https://assets.hcch.net/docs/960b1b52-eda0-4112-aeba-36f5d321beca.pdf.

[6]    Effective service of process under the Hague Convention mandates that service documents bear the seal and signature of the presiding court. The docket in this proceeding shows no such request for seal or signature of the Court. Furthermore, there has been no waiver filed or asserted in this case, further demonstrating that valid service through the Hague has not been made.

7

defendant has not been served."); *Hahn v. Hahn (In re Hahn)*, 2013 Bankr. LEXIS 3670, at *8–9 (Bankr. N.D. Ind. Jan. 22, 2013) (explaining that a court cannot exercise personal jurisdiction unless the defendant has been properly served and even a defendant's actual knowledge of an adversary proceeding does not relieve plaintiff of its obligation).

   **ii.**  ***Even if service was effectuated, Plaintiff fails to establish "minimum contacts" by Mr. Chalopin.***

   Setting the issue of service aside, Plaintiff has still not sufficiently established minimum contacts for the exercise of personal jurisdiction.  Plaintiff argues that specific personal jurisdiction exists because the claims raised in the Amended Complaint arise from Mr. Chalopin's "various activities" within the United States. (Opp. Br. at 15).  But in order for these "various activities" to establish personal jurisdiction, they must be relevant to the claims at hand. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that the only minimum contacts considered in evaluating specific jurisdiction over a non-resident defendant are "the defendant's suit-related conduct.")

   Plaintiff's minimum contact allegations are based almost entirely on FBH and the Bank's contacts with the United States. While there is no dispute as to the exercise of personal jurisdiction over the bank entities in this matter, Plaintiff has failed to plead the requisite suit-related contacts made, or initiated by *Mr. Chalopin*, sufficient to allow him to be personally sued in this matter. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that the Court has consistently rejected allegations that attempt to satisfy the "defendant-focused" minimum contacts element—underscoring the proposition that it is the defendant himself who must have the requisite "minimum contacts" with the forum) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. 408 at 417 (1984); *see also Antico Vacca Techs., Inc. v. Bayer Corp. (In re Gruppo Antico, Inc.)*, 2004 Bankr. LEXIS 2161 (citing *Int'l Shoe*, 444 U.S. 286 (1980)) (stating "some single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality

DMS_US.371385526.1

and the circumstances of their commission create only an attenuated affiliation with the forum"). Plaintiff relies on the formation of FBH, the acquisition of Farmington Bank, and the application to operate FBH and acquire Farmington (Opp. Br. at 16), which all occurred years before the Alameda investment. These contacts are too attenuated from the investment to be suit-related and there is no allegation that these minimal contacts were intentional conduct…*calculated to cause injury to the plaintiff within the forum*," which Plaintiff concedes is what is required in citing *In re Uni-Marts, LLC*, 404 B.R. 767, 776 (Bankr. D. Del. 2009) (cleaned up). In fact, Plaintiffs go to great lengths to argue that this is not a fraud case, which undermines their argument that these contacts are sufficient and their reliance on *In Re Uni-Marts*, which was a fraudulent misrepresentation case where the defendant "directed" false statements, is distinguishable.  *Id*. at 767-–77.

Specific to the Alameda investment, which is what these case concerns, Plaintiffs argue that a single alleged meeting in Seattle about the investment is sufficient.  This alleged isolated meeting with "Legal-Officer-1" in Seattle falls far short as this vague allegation fails to specify what role Legal-Officer-1 played, any details about the alleged discussion, or that it was *calculated to cause injury to the plaintiff within the United States. Id.* Plaintiff's argument on the forum selection clause fares no better as even Plaintiff's cases concede that whether Chalopin is bound by the clause – as opposed to FBH and Farmington – requires an assessment of whether there was a direct benefit to him, which there was not. See Opp. Br. at 17 (*citing Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015). Based on the foregoing, the Court should dismiss all claims against Mr. Chalopin for lack of personal jurisdiction.

E.    **Plaintiff's Non-Bankruptcy Claims Fail to Allege Plausible Claims Against Chalopin in his Personal Capacity.**

i.    *Plaintiff Has Not Alleged Facts Sufficient to Disregard FBH as a Corporate Entity.*

Both of Plaintiff's state law claims are solely asserted against Mr. Chalopin as an individual, even though they entirely rely on a singular transaction between two legal entities, FBH and Alameda. For that reason, Defendants' Motion pointed out that Plaintiffs claims were effectively an attempt to pierce FBH's corporate veil to hold Chalopin personally liable. Since Plaintiffs did not allege that the tortious conduct was caused by a fraudulent use of the corporate form, Plaintiffs had not sufficiently alleged a basis to pierce FBH's corporate veil.

In response, Plaintiffs seemingly acknowledge that their claims are against FBH, but instead argue that they are entitled to pursue claims against Chalopin as the alleged tortious conduct was carried out by Chalopin in his personal capacity as FBH's corporate officer. (Opp. Br. at 19-20). In support of that position, Plaintiffs rely on the *Prairie Cap* decision for the proposition that "a corporate officer can be held personally liable for the torts he commits" and that it is, "immaterial that the corporation may also be liable" for the alleged harms. Opp. at 19-20 (*citing Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35 (Del. Ch. 2015)).

But that misunderstands Defendants' veil piercing arguments and misapplies the law from *Prairie Cap*. In particular, and as Defendants pointed out in their brief, personal liability of corporate officers is appropriate when those officers personally undertake fraudulent activity, which is precisely what occurred in *Prairie Cap. See Prairie Cap. III, L.P.*, 132 A.3d at 48, 59-60 (concluding that corporate officers who generated false monthly sales reports and other financial documents to fraudulently inflate a company's sale value could be held personally liable by the

10

buyers who relied on the false information). As the *Prairie Cap* court explained: "A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud." *Id*. at 60.

But that is not what is being alleged here. As explained by Plaintiffs in their own words, they are not alleging that Chalopin committed fraud, *see* Opp. at 23 (arguing that Defendants have a "misunderstanding" that the aiding and abetting claims "sound in fraud," thereby arguing that Rule 9(b) does not apply to their pleading). If that's true, then they cannot rely on *Prairie Cap* and cases like it to disregard FBH's corporate form. Rather, if Plaintiffs insist that the underlying conduct is not based in fraud[7] "or something like it," than they cannot simply disregard FBH's corporate form and attack Chalopin in his individual capacity.

### ii.    Plaintiffs Have Failed to Plead Chalopin Aided and Abetted a Breach of Fiduciary Duties.

Defendants moved to dismiss Plaintiffs aiding and abetting breach of fiduciary duties claim arguing that they had failed to plausibly allege that Chalopin knowingly participated in any of SBF's fiduciary breaches. Specifically, Defendants pointed out that Plaintiff failed to allege that Chalopin had any knowledge of the underlying mismanagement and misuse of funds that gave rise to the breach of fiduciary duties, and therefore Plaintiffs have failed to adequately state a claim.

In response, Plaintiff's position largely relies on authorities aimed at downplaying the applicable pleading standard, that they do not need to allege actual knowledge or participation, and instead, only need to provide certain "inferences" that Chalopin knew about the alleged misconduct. (Opp Br. at 20-21). Plaintiffs then try to disguise[8] their pleading's actual allegations

---

[7]    Of course, Plaintiffs cannot have it both ways. Either their claims are based in fraud, and are therefore subject to Rule 9(b)'s heightened pleading standard, or they are not, and they cannot disregard FBH's corporate form. They cannot argue both.

[8]    Artfully, Plaintiffs attempt to create the appearance of sufficient pleading by asserting the existence of "allegations" that do not actually appear in their pleadings. For example, Plaintiffs state they have alleged that Chalopin "exploited conflicts of interest" between SBF and Alameda. (Opp. Br. at 22). No such allegation appears in the Amended Complaint. Likewise, Plaintiffs further claim their Complaint "alleges that the Agreement 'extract[ed] terms which require[d] the opposing party to prefer [the counterparty's] interests at the expense of its shareholders."

to argue they have, in fact, raised allegations that "are more than sufficient to create an inference of substantial assistance" for the purpose of aiding and abetting liability. *Id.* at 21. A cursory review of the actual allegations related to Chalopin shows they have not.

To be clear, Plaintiffs' attempt to demonstrate numerous "inferences of substantial assistance," is really just an illusion, and is based on one single allegation. In reality, the only thing being used to try to bind Chalopin to FTX's fraud is the singular allegation that Chalopin improperly "induced" an investment that was not made at a fair valuation. Plaintiffs then argue that the $11.5 million dollar value of the investment is enough "standing alone" to satisfy their pleading requirements, and in support thereof, cite to authority explaining that substantial assistance, *in the context of merger negotiations*, can be inferred from grossly preferential terms to the acquiring company. *See Hospitalists of Delaware, LLC v. Lutz*, No. CIV.A. 6221-VCP, 2012 WL 3679219 at *7 (Del. Ch. Aug. 28, 2012) (*citing In re Answers Corp. S'holder Litig.*, 2012 WL 1253072, at *9–10 (Del. Ch. Apr. 11, 2012). Obviously, this is not a merger dispute, and Plaintiffs have not alleged that FBH was awarded preferential terms or treatment in the sale of a business. Rather, Plaintiffs have solely alleged that Alameda's investment price was overvalued. While that is certainly disputed, it's also not material to whether or not Plaintiffs' have adequately pled aiding and abetting a breach of a fiduciary duty.

As such, Plaintiffs' reliance on the $11.5 million investment price is not enough to plausibly allege substantial assistance, as there still must be some independent tortious conduct on the part of the third party (*i.e.*, Chalopin) that substantially caused or assisted the alleged fiduciary breach. As the case on which Plaintiffs principally rely makes clear, this typically occurs where a

---

Again, that allegation is not found in the Amended Complaint. Rather, in making those statements, which are really just quotes from legal authorities, Plaintiffs are just pointing to their same allegation that $11.5 million was too much to pay for Alameda's investment. While that is disputed, Plaintiffs cannot be permitted to defend against a motion to dismiss with "allegations" that were not actually made in their pleading.

third party facilitates "[a] breach by misleading the fiduciary with false or materially misleading information," or alternatively, where a third party withholds information "in a manner that misleads the fiduciary on a material point." *Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.*, 251 A.3d 212 (Del. Ch. 2021). In either scenario, liability falls to the third party via their "substantial assistance or encouragement" in the fiduciary's underlying conduct which caused the alleged breach of a duty of loyalty or care. *Id.* Applied here, there is no additional tortious conduct being alleged sufficient to plausibly assert a substantial assistance claim. Therefore, and for the reasons set forth in Defendants' initial motion, Plaintiffs' Count V should be dismissed.

### iii. *Plaintiffs Have Failed to Plead Aiding and Abetting Corporate Waste.*

As Defendants pointed out in their Motion, it is well established that corporate waste claims will only arise in the "rare, unconscionable case" and for that reason, the pleading standard for corporate waste is high and rarely satisfied. *See* Mot. at 26 (*citing RPA Asset Mgmt. Servs., LLC v. Siffin (In re MTE Holdings LLC)*), No. 19-12269 (CTG), 2022 Bankr. LEXIS 2352, at *27 (Bankr. D. Del. Aug. 24, 2022). Not surprisingly then, Plaintiffs aiding and abetting corporate waste claim fails as Plaintiffs have not pled anything supporting their claim that Chalopin had any actual knowledge of the alleged financial mismanagement, and therefore cannot have "aided and abetted" any of SBF's alleged waste.

In response to those arguments, Defendants largely rely again on the investment price of $11.5 million dollars, arguing that amounts to "waste," which they claim should let them survive dismissal. But Defendants position here misses the mark – the question to be answered is not whether the $11.5 million dollar investment is waste, but instead, is whether or not Chalopin, who has no affiliation with SBF, FTX, or Alameda, can *individually* be held liable for alleged corporate waste of a corporation with which he is not affiliated. The answer to that question is no, he cannot,

13

and Plaintiffs aiding and abetting corporate waste claim therefore fails. *See In re DSI Renal Holdings, LLC*, 574 B.R. 446 (Bankr. D. Del. 2017) (rejecting a corporate waste claim being brought against non-directors of a company, noting that the court could find no authority that supported a corporate waste claim against any individual other than the director of the company who orchestrated the waste); see also *In re Wonderwork, Inc*., 611 B.R. 169, 208 (Bankr. S.D.N.Y. 2020) (noting that under Delaware law, claims for waste will not lie against anyone other than a corporate director).

While styled as an "aiding and abetting" claim, Plaintiffs are really seeking to hold Chalopin liable for a corporate decision made by SBF on behalf of Alameda, an individual that Chalopin does not control. While Defendants were not able to identify a single authority that would support that type of claim, the closest came from this Court's decision in *In re World Health Alternatives, Inc*., wherein this court allowed an aiding and abetting corporate waste claim filed against a corporation's general counsel to survive a motion to dismiss, finding that the general counsel could be liable for his failure to "establish guidelines for corporate expenditures." *In re World Health Alternatives, Inc*., 385 B.R. 576, 594 (Bankr. D. Del. 2008). The court reasoned that, as general counsel, "it seems highly likely that he would have been consulted as to guidelines for ordinary expenditures," and to the extent the corporate directors committed waste, the court was willing to infer the defendant was aware of and was responsible for preventing the waste, and therefore could theoretically be liable for aiding and abetting. *Id*.

Intrinsic in the reasoning, however, is that the defendant had some corporate responsibility to oversee and prevent the wasteful transaction at issue. But that reasoning plainly has no application here. Chalopin is not Alameda's officer or general counsel. He is not a board member or stockholder of Alameda. Rather, he was the director of a corporation that was the recipient of

14

an investment from Alameda. Whether or not that investment can be considered waste is immaterial. What is material is whether or not a non-affiliated third party can be liable for aiding and abetting corporate waste.[9] Plaintiffs have not cited to a single authority supporting that contention, and Defendants could not find one where it was even alleged. As such, for the reasons set forth above, Plaintiffs' aiding and abetting corporate waste claim should be dismissed.

## CONCLUSION

The Defendants respectfully request that the Court disregard the unsupported and vague allegations in the Amended Complaint and recognize the Plaintiff's failure to meet the requisite pleading standard. For these reasons,[10] the Defendants request that the Court dismiss the Amended Complaint in its entirety, with prejudice.

---

[9]    If the Court were to accept Plaintiffs theory of aiding and abetting corporate waste liability, a dangerous precedent could be set, opening the door for disgruntled shareholders to file lawsuits against recipients of a corporate investments which they interpret to be wasteful. The Court should decline to set this precedent and dismiss Plaintiffs' claim.

[10]    For the purposes of this reply, Defendants did not submit reply arguments on the reasonably equivalent value element of the fraudulent conveyance claims, and instead rests on their prior briefing. Defendants reserve argument on this element for subsequent proceedings in this litigation.

DMS_US.371385526.1

Dated: May 30, 2025
      Wilmington, Delaware

                  Respectfully submitted,

                  FAEGRE DRINKER BIDDLE & REATH LLP

                  */s/ Brett D. Fallon*
                  Brett D. Fallon (Del. Bar No. 2480)
                  222 Delaware Avenue, Suite 1410
                  Wilmington, DE 19801
                  Telephone: (302) 467-4200
                  Facsimile: (302) 467-4201
                  brett.fallon@faegredrinker.com

                        -and-

                  BAKER, DONELSON, BEARMAN,
                  CALDWELL & BERKOWITZ, PC

                  Ty Kelly Cronin (*pro hac vice*)
                  100 Light Street, 19th Floor
                  Baltimore, Maryland 21202
                  Telephone: (410) 862-1049
                  tykelly@bakerdonelson.com

                  Destiney Parker-Thompson (Del. Bar. No. 7479)
                  2235 Gateway Access Point, Suite 220
                  Raleigh, NC 27607
                  Telephone: (984) 844-7900
                  dparkerthompson@bakerdonelson.com

                  *Attorneys for Defendants*