## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD., *et al.*, | Case No. 22-11068 (KBO) |
| **Debtors.** | |
| FTX RECOVERY TRUST, | Adv. Proc. No. 24-50197 (KBO) |
| **Plaintiff,** | |
| FBH CORPORATION, and JEAN CHALOPIN, | |
| **Defendants.** | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
## FOR LEAVE TO FILE THE SECOND AMENDED COMPLAINT

Defendants FBH Corporation and Jean Chalopin ("Defendants"), hereby file this Opposition to Plaintiff's Motion for Leave to File its Second Amended Complaint, and in support thereof, state as follows:

### I.     Introduction.

In response to this Court's dismissal of all six counts in the First Amended Complaint ("FAC") for failure to state a claim, Plaintiff now seeks its third bite at the apple by filing this motion for leave to file a Second Amended Complaint ("SAC"). To its motion, Plaintiff attaches a proposed SAC that attempts to revive all of its claims against Defendants FBH and Chalopin.[1] In clear contrast to their stated purpose to add allegations on "reasonably equivalent value," an element relevant to the dismissal of the two claims against FBH, Plaintiff's proposed SAC goes

---

[1] The proposed SAC withdraws the two claims raised against Defendant Farmington State Corporation.

DMS_US.375448247.1

far beyond that narrow issue, and seeks to revive the four individual claims against Chalopin by adding speculative allegations that are baseless and futile.

Despite the dismissal of those claims having nothing to do with reasonably equivalent value, Plaintiff's motion attempts to misdirect the purpose of the proposed amendments, contending that the new allegations against Chalopin are solely being made "to preserve its appellate rights." In effect, Plaintiff is simultaneously acknowledging that the new allegations against Chalopin cannot survive dismissal, yet still arguing that the amendment should be permitted for the purposes of a future appeal. But that position does not square with the applicable rules of procedure and easily meets the futility standard, the precise grounds upon which proposed amendments are routinely denied. While Plaintiff is correct that it is required to affirmatively preserve its claims against Chalopin, that preservation can be easily accomplished by filing the appropriate notice with the Court. But that is not what the proposed SAC does here. Instead, the proposed SAC goes much further, seeking to alter the allegations underlying the legal theories of the dismissed claims – which were not subject to the first dismissal order and therefore are not even in the appellate record.

Importantly, even if the Court were to try to consider only the new allegations relevant to the issue of reasonably equivalent value (which is not how the SAC is drafted or redlined), the SAC would still be futile, and any future litigation on those claims would be unduly prejudicial. The SAC still fails to cure the fundamental flaw in Plaintiff's failure to allege reasonably equivalent value – that Plaintiff's allegations fail because its own pleading makes clear that "[t]he Transfer occurred when a future business plan existed to expand Farmington from a small community bank into one offering cutting-edge cryptocurrency services." *In re FTX Trading Ltd*., No. 22-11068 (KBO), 2025 WL 3490816 at *9 (Bankr. D. Del. Dec. 2, 2025). None of the new

DMS_US.375448247.1

allegations alter that fact, and under the futility standard, Plaintiff's Motion should be denied. Even if the proposed amendments were not futile (they are), leave to amend should also be disallowed as unduly prejudicial based on the Plaintiff's failure to cure defects after reasonable notice. Therefore, and for the reasons set forth below, Plaintiff's Motion should be denied in its entirety.

## II.    Procedural Background.

Plaintiff filed its initial Complaint on November 8, 2024, asserting the same six counts premised on the same core facts that form the basis of the proposed SAC. (Adv. D.I. 1). On January 30, 2025, Defendants filed their first motion to dismiss, arguing, among other things, that the Complaint failed to assert fraudulent transfer claims against Defendants Farmington and FBH as there were not sufficient allegations that the subject transfer lacked reasonably equivalent value. (Adv. D.I. 10). The first motion to dismiss similarly argued that the individual claims against Chalopin should be dismissed as there were no allegations that he was the eventual transferee of the at issue funds, and also could not be liable in tort based on a failure to allege the requisite knowledge and substantial assistance. *Id*. Rather than respond to that motion, Plaintiff instead filed the FAC which, under Fed. R. Civ. P. 15(a), they were permitted to do once as a matter of right. (Adv. D.I. 21).

However, despite being on notice of their deficient claims from Defendants' initial motion to dismiss, the FAC still failed to assert valid claims as it failed to allege reasonably equivalent value, knowledge or substantial assistance, or that Chalopin was the ultimate transferee of the at issue funds. Defendants filed a second motion to dismiss, and after full briefing and oral argument, the FAC was dismissed in its entirety for the same reasons articulated in Defendants' first motion to dismiss. (Adv. D.I. 80). However, after additional letter briefing by the parties, on December 2, 2025, the Court amended its dismissal order, giving Plaintiff thirty days to file a motion seeking

DMS_US.375448247.1

leave to amend – requiring Plaintiff to demonstrate why a second amendment should be permitted given its past failures to cure its pleading deficiencies. (Adv. D.I. 82).

Now, in seeking leave to amend, Plaintiff frames its motion and the proposed SAC as being a significant reduction from its prior pleadings in that Plaintiff does not "intend to argue the merits" of any of the claims against Chalopin, and instead only intends to pursue the two fraudulent transfer claims against FBH. (Adv. D.I. 85). However, in their proposed amendments, Plaintiff also elected to "add certain new allegations" related to the claims against Chalopin, once again amending their claims that Chalopin was the direct transferee of the at issue funds, and alleging that "upon information and belief" Chalopin did have actual knowledge of the underlying FTX misconduct, allegations designed to bolster meritless tort claims against him. Plaintiff's justification for these new allegations is that they are necessary "to preserve its appellate rights" – despite the new allegations not being subject to an appeal of the dismissal of the FAC. In practice, the "certain new allegations" are a back door effort to allow discovery related to, and revive the allegations related to Chalopin, who should continue to be entirely dismissed from this litigation. Further complicating the issues, the redlines to the SAC do not differentiate what amendments are for their purported need to preserve appeal versus those that they believe are meritorious based on their briefing.

## III.    Legal Standard.

Under Fed. R. Civ. P. 15(a)(1), made applicable to this proceeding by Fed. R. Bankr. P. 7015, litigants are permitted to freely amend their Complaint once as a matter of course, but must seek permission from the Court for all subsequent amendments. While Courts should "freely give leave" to amend when justice so requires, leave should be denied where: "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3)

4

the amendment would prejudice the other party." *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). Futility "means that the complaint, as amended, would fail to state a claim upon which relief can be granted." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). For that reason, the standard for assessing futility "is the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*. For that reason, in making futility determinations, courts may also consider "documents attached to the complaint as exhibits or incorporated by reference." *Charter Commc'ns, Inc. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 338 F. Supp. 3d 242, 262 FN 3 (S.D.N.Y. 2018). Leave to amend should also be denied where prior amendments were permitted and the litigant was on notice "of the potential problems with the allegation in his Complaint" but did not cure those problems with the amendment. *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 145 (3d Cir. 2002).

The issue of prejudice "focuses on the hardship to the defendant if the amendment was permitted." *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs., Inc*., 335 F.R.D. 54, 61 (M.D. Pa. 2020), *aff'd*, 12 F.4th 337 (3d Cir. 2021). An amendment is deemed prejudicial where it "would result in additional discovery, cost, and preparation," and requires the moving party to show that it would be "unfairly disadvantaged or deprived of the opportunity to present facts or evidence." *Id*. (quoting *Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc*., 663 F.2d 419, 426 (3d Cir. 1981).

## IV.    Argument.

### A.    Leave to Amend Counts II, IV, V and VI of the SAC and their Related New Allegations Should be Denied.

As Plaintiff's Motion acknowledges, the proposed SAC "adds certain new allegations" to four claims raised against Chalopin in his personal capacity: 1) Count II: fraudulent transfer pursuant to 11 U.S.C. §§ 548 and 550; 2) Count IV: fraudulent transfer pursuant to 11 U.S.C. §§

544 and 550; 3) Count V: aiding and abetting breach of fiduciary duties; and 4) Count VI: aiding

and abetting corporate waste. However, in Plaintiff's own words, the "certain new allegations"

related to those four counts "would be subject to dismissal" if permitted. (Adv. D.I. 85, at. ¶ 9).

Therefore, Plaintiff concedes futility, and the amendments should be rejected on this ground alone.

*Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (defining futility as "the complaint,

as amended, would fail to state a claim upon which relief could be granted.").

　　　While Plaintiff concedes that the amended Counts II, IV, V, and VI are futile, Plaintiff

claims, without citing any federal rule permitting such a tactic, that they should be permitted in the

SAC solely to "preserve them for appeal." But that is a red herring and procedurally unnecessary.

The applicable authorities in the Third Circuit are clear that a plaintiff can amend its complaint

after the dismissal of all or some claims or parties, and preserve the right to appeal the dismissed

claims or parties without substantively amending those claims. *See  U.S. ex rel. Atkinson v. PA.*

*Shipbuilding Co*., 473 F.3d 506, 517 (3d Cir. 2007) ("If a party omits a claim from an amended

complaint that it would not have been futile to replead, that party can still preserve the claim for

appellate review by standing on the dismissed claim despite leaving it out of the amended

complaint.")  This can be done by filing a notice with the trial court that Plaintiff "has decided to

stand on his previous pleading with respect to a claim or party now dropped from the otherwise

operative pleading." *Id*. Applied here, if Plaintiff's sole concern was preserving its appellate rights,

it could have kept the claims against Chalopin in the SAC, but without any "new allegations" to

bolster them, and stated that those claims were included solely for the purposes of preservation.

Alternatively, Plaintiff could have omitted those claims from the SAC entirely, and notified the

Court of its intent to stand on its previous pleading with respect to those claims. The proposed

SAC does neither, and instead creates an unworkable and futile proposed operative pleading.

Plaintiff's real motive is only made more obvious by including "new allegations" that are solely related to the dismissed claims against Chalopin but do not appear under the specific causes of action subheadings, and instead appear in the overall factual section of the SAC. *See e.g.*, SAC ¶¶ 41, 45 and 80. These allegations and others in the body of the SAC have nothing to do with reasonably equivalent value, and are instead specific new allegations that appear to seek to revive the individual claims raised against Chalopin, which are speculative, largely cited "upon information and belief," and followed by conclusory statements regarding the elements of the claim at issue.[2] As such, the SAC should not be permitted as these new allegations in the body of the SAC would remain a part of the factual section of the operative pleading, allowing Plaintiff to argue that the allegations are potentially relevant in discovery and other stages of the litigation. Therefore, even though Plaintiff is now claiming it does not intend to pursue those claims, allowing the SAC as currently constructed will tacitly allow the dismissed legal theories to remain a part of this litigation, opening the door for costly and undue discovery which should not be permitted by this Court and the Motion for Leave should be denied in its entirety.

      **B.**    **Leave to Amend Counts I and III of the SAC Should Also be Denied as Futile as the New Allegations Still Fail to Allege that the Subject Transfer was for Less than Reasonably Equivalent Value.**

During the prior motion to dismiss briefing, the Plaintiff's argument that the subject transfer was for less than reasonably equivalent value was primarily based on the $11.5 million

---

[2] *See* SAC ¶ 80 "Upon information and belief, FBH, however, was just a shell for Chalopin to receive the $11.5 million." That "new allegation" only made "upon information and belief" is directly tied to the dismissal of Counts II and IV that were dismissed based on a failure to plausibly allege that Chalopin was a transferee of the at issue funds such that he can be liable under the bankruptcy code. That allegation was not before the Court when it dismissed the Counts II and IV as alleged in the FAC, and therefore cannot be preserved for the appeal of the decision to dismiss those claims.

DMS_US.375448247.1

purchase price of the approximate 10% interest in FBH, which Plaintiff described as "overvalued
by at least a factor of twenty." (Adv. D.I. 35, p. 12). Plaintiff also cited to their allegations that
"Defendants pursued a plan that violated regulatory restrictions, and that the investment came after
Chalopin and his controlled companies had granted favors to [sic] FTX group." *Id*. At oral
argument, the Court challenged the sufficiency of those allegations, particularly in the context of
the business plan that is referenced in the Subscription Agreement:

> The Court:    Well, how much weight should I give the references in the
> complaint to the business plan that went along with this? …
> you know, the idea that I would not understand that people
> make an investment to grow a business…. But this idea that,
> you know, should I ignore the fact that this went along with
> the business plan to expand the community bank, I mean,
> just as any investment?

Ex. 1, Transcript: p.26:24-25; p.27:1-16

In response to that line of questioning, Plaintiff's counsel and the Court had the following
exchange:

> Mr. Nesser:    a business plan is just a piece of paper. I could write a business plan.
> It's not worth $10 million, right? The question is: Where a company
> – we alleged the company was effectively worthless. We alleged the
> company was not – had $5 million in assets. When you have a
> company that's worth $5 million of assets, you don't pay $10 million
> for 10 percent of it.

> The Court:    No, I think you would need an allegation that the business model
> wouldn't yield the value to justify a 10 percent at $10 million…
> there's a dot that seems to be, maybe, missing.

*Id*. at p. 30:4-17

Critically, the Court ultimately found that the FAC failed to plausibly allege that the transfer
lacked reasonably equivalent value on those grounds: "Plaintiff makes no factual allegations from
which the Court can reasonably infer that the possible, future value of this plan at the time of the
Transfer was less than Alameda's investment." *In re FTX Trading Ltd*., 2025 WL at *9 (Bankr. D.

8

Del. Dec. 2, 2025). None of the allegations in the SAC fills that gap, and leave to file the SAC should be denied for the same reason.

In an effort to obfuscate that clear deficiency, the SAC includes new allegations that are just recycled versions of the same allegations that warranted dismissal of the FAC. Primarily, the SAC doubles down on FBH's "value" before the investment of less than reasonably equivalent value on its face, alleging: 1) that 16 months before the investment, Chalopin had paid $3.1 million to buy all of Farmington's equity, SAC at ¶ 53; 2) that the "tangible book value" of FBH's sole asset was $5 million at the time of the transfer, *Id*. at ¶ 64; 3) that in the lead up to the investment Farmington's net losses increased substantially in 2020 and 2021, *Id*. at ¶ 65; and 4) that comparable banks "with much larger and mature business" operations had lower valuation multipliers than what Alameda paid, *Id*. at ¶ 66. While these are technically "new" allegations, they all essentially go to the same flawed argument that has already been rejected by the Court: over-reliance on the allegation that Alameda's investment price was grossly inflated ignores the possibility of future value that was clearly contemplated in the Subscription Agreement that was both referenced in the FAC and made a part of the record for the oral argument on the FAC.

Attached for the first time to the SAC, Plaintiff focuses now on Exhibit 1 that it characterizes as a "business plan" [despite its clear title of "business vision"] and wants the Court to infer that this is all that existed or was the full plan. Plaintiff then discounts the validity or quality of the business vision based on a comparison of it to certain internet articles discussing business plan drafting. *Id*. at ¶ 5. [3]  To that (misplaced) end, the proposed SAC attempts to allege "there was no business plan," because a business plan is "[a] formal, written document, typically dozens of

---

[3] To support its claims, Plaintiff offers online articles that appear to be aimed at helping entrepreneurs write a business plan, which is certainly not an authoritative source on what a business plan is or must be. *See* SAC at FN's 3 and 4.

9

Case 24-50197-KBO    Doc 86    Filed 01/16/26    Page 10 of 13

pages long." *Id*. Plaintiff does so in an obvious attempt to refocus the Court away from the Subscription Agreement that has already been addressed by the Court and in doing so attempts to bait Defendants into arguing over the sufficiency of the "business vision," instead of addressing the gap that continues to exist in the SAC. The Subscription Agreement already makes clear that this is an investment and the existence or non-existence of a separate business plan does not address the same gap that resulted in dismissal by the Court: there is no allegation that if the investment had been realized, the value was not reasonably equivalent value. The SAC is similarly fatally deficient as the FAC.

Notwithstanding that, as is clear from even a superficial perusal of the Subscription Agreement[4], there is a business plan. *See* Ex. 2 attached hereto, *Business Plan for the Future Operation of Farmington State Bank (WA)*. As this document clearly demonstrates, there was a formal, 159 page business plan that contained a marketing strategy, management plan, competitive analyses, and all of the "prerequisites" suggested in Plaintiff's cited internet articles. *Id*. While unnecessary to the futility analysis, in that the Court can find the SAC futile by solely considering the Subscription Agreement,[5] the court may consider the formal business plan as it is incorporated by reference to the SAC. A court may consider documents referenced in or integral to the allegations in a complaint. *See, e.g.*, *O2Cool, LLC v. TSA Stores, Inc. (In re TSAWD Holdings, Inc.),* No. 16-10527 (MFW), 2017 Bankr. LEXIS 559, at *11 (Bankr. D. Del. March 1, 2017)

---

[4] The Subscription Agreement repeatedly references the business plan. *See e.g.*, Ex. 2, to the SAC at ¶ 4.5 (outlining the new business plan's design to create a "distinct digital banking unit" focused on targeted demographics looking for innovative digital banking services.); *Id*. at ¶ 4.6 (outlining the plan to serve both the growing legal cannabis and cryptocurrency markets); *Id*. at ¶ 4.7 (outlining the plan to offer wealth management services to digital asset related businesses.
[5] Since the Subscription Agreement is attached to the SAC, it is an integral document that cannot be contradicted. *see Kamal v. J. Crew Grp., Inc*., 416 F. Supp. 3d 357, 366 FN 1 (D.N.J. 2019) ("it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.").

DMS_US.375448247.1

(citing *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) ("[A]though a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss to one for summary judgment")).  *See also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 377 FN 9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). Clearly then, a business plan does exist, and therefore cannot be contradicted by conclusory and antithetical allegations.

Even so, attempting to argue that the business plan did not really exist, or at a minimum, was not viable, the SAC conclusorily alleges that the business plan would *likely* not have been realized because "the regulatory environment was cautionary of both cryptocurrency and cannabis" at the time of investment and that because of that regulatory scrutiny "FBH and Farmington were not authorized to conduct any of the business underlying what they later referred to as their so-called 'business vision.' *Id.* at ¶ ¶ 6, 54, 68. But once again, these allegations, while detailed and numerous, are not really new, and they are still defective. Indeed, the FAC previously alleged Defendants' "new business model violated regulatory restrictions" and that Chalopin "had acquired Moonstone subject to regulatory restrictions and induced the FTX Group to invest into it based on a business model that violated those restrictions." FAC at ¶¶ 7, 9. But what was fatal to the FAC remains fatal to the SAC. While Plaintiff did add many new details regarding the business fundamentals and potential regulatory hurdles that Defendants may have faced, the core allegations are the same, and the same "dot" seems to be missing – nothing in the SAC plausibly alleges Farmington's plans could not be viable, and therefore there is still no allegation "that the investment had no chance of generating a positive return." *In re FTX Trading Ltd.*, No. 2025 WL

DMS_US.375448247.1

at \*10 (Bankr. D. Del. Dec. 2, 2025). As such, the proposed SAC still fails to plausibly allege the lack of reasonably equivalent value, and Plaintiff's proposed amendment is therefore futile and its motion should be denied.

C.      **The Proposed Amendments Would Be Unduly Prejudicial And Should Be Denied Based on the Repeated Failures to Cure Despite Ample Notice.**

Lastly, and separate from the futility analysis, the Court should exercise its discretion to deny the proposed SAC based on Plaintiff's inability to cure. In addition to having the ability to deny proposed amendments upon a finding of undue delay, bad faith, or futility, the Court has "discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in this complaint, but chose not to resolve them." *Krantz*, 305 F.3d 140, 144 (3d Cir. 2002). This discretion is particularly relevant where, as here, the proposed amendment "seeks to replead facts and arguments that could have been pled much earlier in the proceedings." *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644 (3d Cir. 1998), *abrogation on other grounds recognized by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000). As the Third Circuit has affirmed:

> A plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed. [Plaintiff] is not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier. Rather, [Plaintiff] is modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings.

*Gasoline Sales, Inc. v. Aero Oil Co*., 39 F.3d 70, 74 (3d Cir. 1994)

Applied here, the Plaintiff's Motion for Leave should be denied as unduly prejudicial to Defendants. This case has been pending for fourteen months, and concerns a highly publicized scandal and bankruptcy that has been in the public domain for over four years. As noted above, the SAC is the Plaintiff's third bite at the apple. Importantly, via their role as bankruptcy trustee, this is not a situation where the Plaintiff does not have access to the necessary information to inform their allegations. Rather, and as their pleadings to date make clear, Plaintiff has access to a

trove of records related to the FTX group, their fraudulent schemes, their internal communications, and evidently, access to confidential informants, in addition to the copious amount of information that is already in the public record. Despite that abundance of information, it is clear that Plaintiff does not have sufficient information to cure their deficient allegations in order to sustain their claims. Critically, the new details in the SAC were available to Plaintiff when they drafted their two prior complaints. For those reasons, the Court should exercise its discretion and deny the Plaintiff's requested leave to amend.

## V.    Conclusion.

For the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint should be denied, and the claims against Defendants should be dismissed with prejudice.

Dated: January 16, 2026

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Brett D. Fallon*
Brett D. Fallon (Del. Bar No. 2480)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
brett.fallon@faegredrinker.com

- and –

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Ty Kelly Cronin (*pro hac vice*)
100 Light Street, 19th Floor
Baltimore, Maryland 21202
Telephone: (410) 862-1049
tykelly@bakerdonelson.com

*Attorneys for Defendants*

13